REBECCA SAMS ET AL., APPELLANTS, VS. HANNAH KING ET ALS., APPELLEES.

1. Where the last clause of one section of a statute is plainly inconsistent with the first portion of the same section and with another preceding section of the statute, and this section and part of section conform to the obvious policy and intent of the Legislature, the last clause, if operative at all, must be so construed as to give it an effect consistent with the other section and part of section,

and with the policy they indicate. Hence the last clause of Section 63, Chapter 1976, Laws, which provides that "the validity of any sale for taxes under this act, or of any title acquired by, through or under such sale, shall only be affected or questioned by alleging and proving that the property sold was not subject to taxation, or that the taxes had been paid before such sale, or that the property so sold had been redeemed according to law," must be so construed as not to repeal the law in so far as it provides that until one year after the recording of the tax deed it shall be only *prima facie* evidence of regularity and title. (Sections 60 and 63, Chapter 1976, Laws.)

3. The presumption of regularity which attaches to a tax deed must prevail in its favor until evidence is given of facts which show irregularity. It is not enough to prove facts from which irregularity may be inferred. The presumption must prevail until facts inconsistent with it are shown. The testimony of the Clerk of the Circuit Court that he had, at a previous date, examined the records of his office and did not think that there was any record of the tax sale, but that he would not, without further examination, swear to the fact positively, is not sufficient to overthrow the presumption of regularity, and a verdict of the jury based upon such testimony should be set aside.

4. The power of a Collector of Revenue to enforce by sale the collection of taxes continues until the taxes are collected, notwithstanding the warrant of the Assessor directs a return or report of collections upon a particular day.

5. The description of the land upon the assessment roll is sufficiently certain if, by looking at the entire roll, it is seen that the land sold is the land taxed.

6. The statute directs the clerk to make a deed to the purchaser, his heirs or assigns. The act of the clerk in making such deed to a person claiming and purporting to be the heir of the purchaser is

not a judicial determination of that fact in the sense that it is binding upon the true heir, or any party having the right to raise the question. The Legislature, by virtue of its general power to prescribe the method of collecting taxes, can impose this duty upon the clerk.

7. A tax deed for land sold for State and county taxes is properly executed in the name of the State by the Clerk of the Circuit Court for the county in which the land was situated. He is the County Clerk within the meaning of the Legislature.

8. A tax deed after sale of land due for city taxes should be in the name of the city, and not in the name of the State.

Appeal from the Circuit Court for Duval county.

The respondents sued the appellants in the Circuit Court for Duval county in ejectment to recover lot 5, in block twenty-six, in the City of Jacksonville.

The defendants pleaded the general issue, not guilty. Possession of the defendants and the execution of the deeds of the respective parties were admitted.

The evidence upon the trial was substantially as follows: For the plaintiff—Deed of I. D. Hart to Farley Sams conveying this lot.

Cataline B. Simmons, for the plaintiff, testified: That Sallie and Rebecca Sams were the aunts of Lloyd Peck; that he was an infant at the death of his mother, Farley Sams, and that his said aunts took care of him during his life-time and up to his death; that Sallie Sams requested him to divide the lot in suit between his wife and his aunt, Rebecca Sams, for taking care of his mother, Farley Sams, during her illness, and of him during his life:

Direct for defendants:

A tax deed to Mollie Sams reciting that on the first of June, A. D. 1874, a sale of the lot for State and county taxes for the year 1873 was had; that at that sale Sallie Sams became the purchaser; that before the expiration of the time to redeem expired she died, leaving Josephus Sams her sole heir, and he also died leaving plaintiff, Mollie

Sams, his sole heir, and on the 18th November, A. D. 1879, she obtained this deed from the Clerk Circuit Court Duval county in the name of the State. This deed was recorded on the 18th November, A. D. 1879.

A tax deed to Mollie Sams reciting that on the 5th January, A. D. 1874, Sallie Sams became the purchaser of the lot at a sale for taxes due the city of Jacksonville for the year 1873. On the 20th November, A. D. 1879, Mollie Sams claimed title as above stated. This deed from the city to her was executed at that date by the City Clerk in the name of the city. It was recorded on the 20th November, A. D. 1879.

A tax deed from the city of Jacksonville to C. W. Myerhoff dated December 2, 1879. The sale was had July 3, 1878, for taxes of 1877. The deed was recorded December 6, 1879.

Letters of administration to Mollie Sams on the estate of Josephus Sams, and proof of the marriage of Josephus Sams and Mollie Sams, were also placed in evidence.

Defendant, Mollie Sams, for defendant swears that Sallie Sams was the mother of Josephus Sams, her husband; that he was the sole heir of Sallie, and that she, Mollie, was the sole heir of Josephus; that Sallie Sams had always paid the taxes on the lot while she (Mollie) lived with her; that Sallie had taken care of Lloyd Peck during his entire life, and that she (Sallie) purchased this property at tax sale to protect herself in the money she had paid out for taxes, for taking care of Lloyd Peck, and for the doctor's bill and funeral expenses of his mother, Farley Sams, and that she (Mollie) and Sallie Sams had offered to divide the lot with Lloyd Peck's wife and children, but they declined the proposition.

Rebecca Ryalls, the cousin of Lloyd Peck, testifies that her mother, Rebecca Sams and Sallie Sams took care of

and supported Lloyd Peck all his life. As to bills of Lloyd Peck and his mother her testimony is substantially that of Mollie Sams. She says that her mother, Rebecca Sams, built the house on the lot; that Lloyd Peck knew when the lot was sold; that he was then of age, and said he did not care if it was sold.

Upon an offer of defendants to introduce receipts showing the alleged payments they were excluded, the plaintiff excepting.

Plaintiffs in rebuttal:

Thomas E. Buckman, Clerk of the Circuit Court, the legal custodian of the records of advertisements of tax sales, stated that at a previous date he had examined the records and did not think there was any record of the tax sale for State and county taxes of the year 1873, but he was not certain, and would prefer to examine the records again before he could testify positively that there were no such records made in his office.

R. P. Moody, Tax Collector of the city of Jacksonville, and custodian of the tax books, produced the city tax books for the year 1877.

The warrant attached thereto directed the collection of the taxes on or before the first Monday in February.

He stated that he could not find the tax book of 1873; that it might be in the City Clerk's office who was absent. To this office he went, found it in custody of John S. Driggs, obtained and produced book purporting to be city tax book of 1873. To its introduction in evidence the defendant objected upon the ground that the City Tax Collector, and not the City Clerk, was the proper custodian of city tax books, and the City Clerk's office then being in charge of another, the said books did not come from the proper custodian of said book or from the proper office.

The objection was overruled.

The court held that it was proper evidence.

To this ruling defendants excepted. The bill of exceptions does not recite that it was put in evidence, and it does not appear to have been introduced. The bill simply recites that it was offered, that it was held to be admissible, and that this ruling was excepted to.

H. A. L'Engle, for plaintiff, testified that he was the Tax Collector of Duval county. He produced the State tax book of 1873, which tax book was then offered and admitted in evidence.

John S. Driggs was produced; plaintiff offered to prove by him that he was an Alderman of the city of Jacksonville; that he was not the City Clerk; that the Clerk was absent, but had left him in charge of his office, and that he had access to all of it except one part of the Clerk's desk; that he could not find any record in the City Clerk's office of city tax sales. To which defendants objected upon the ground that he was not the City Clerk or the proper custodian of the city records. The court overruled the objection, and the defendant excepted. Just here we remark that the respondents insist that the bill of exceptions is incomplete in that testimony to the effect stated was introduced, and that the bill of exceptions does not contain it. The bill as it appears here, which must be taken to be true, recites that the plaintiff produced one John S. Driggs and offered to prove by him the facts stated, but it does not appear that such testimony was introduced. If such testimony was introduced, the plaintiffs, upon the settling of the bill of exceptions, could have readily had the bill amended in that respect.

After a number of instructions given and refused, and exceptions, there was a verdict for the plaintiffs. Then followed a motion for new trial upon the exceptions reserved and upon the general ground that the verdict was

contrary to the law and the evidence, which being denied there was judgment for the plaintiffs. From that judgment this appeal was taken.

*C. P. Cooper* for Appellants.

*John Earle Hartridge* and *M. C. Jordan* for Appellees.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

We have in the statement of this case omitted to insert at length all of the charges given or refused which were made the subject of exception, and which are here for review. We will refer to them only so far as is necessary to understand and explain the conclusions which, after careful examination, we have reached as to the facts in the case and · the law applicable to them.

Plaintiffs were the widow and children of Lloyd Peck, who was the son and heir of Farley Sams, who derived her title from Isaiah D. Hart, the admitted original owner of the lot which is the subject of the action. This was the title established by them. Defendant's title, as claimed, is in subordination to the title of Hart and Farley Sams and against the title of the widow and children of Lloyd Peck; they claim under and by virtue of tax deeds given after sales for taxes due by Lloyd Peck.

It appears from the testimony that the lot in question was sold for taxes due the State and county for the year 1873; that such sale was had on the 1st of June, A. D. 1874, Sallie Sims becoming the purchaser; that she died leaving surving her one son, Josephus Sams, who died, leaving surving him his wife, the plaintiff, Mollie Sams ; and that the Clerk of the Circuit Court, after the time for redemption had expired, and upon the 18th November, 1879, executed a deed to her for the lot so sold. This deed was

recorded on the 18th of November, A. D. 1879. Sallie Sams also purchased this lot at a tax sale had on the 5th January, 1874, for taxes due the City of Jacksonville for the year 1873, and a deed for it was executed to Mollie Sams by the City Clerk in the name of the city on the 20th November, 1879. It was recorded upon that date.

The revenue acts controlling the effect of deeds of this character provide that they shall be *prima facie* evidence of regularity of the proceedings from the valuation of the land by the Assessors to the date of the deed, inclusive, and of the title of the purchaser.

The act of 1872, (Chap. 1887, p. 44, Acts of 1872,) contained in addition to a section to the effect stated above, another section providing that no suit should be commenced to recover possession of the lands sold for taxes, unless such suit or proceedings be commenced within one year after the recording of the deed, to set aside the deed or to recover possession, except upon the grounds that the said lands were not subject to taxation, or that other enumerated facts existed.

The act of 1874, (Chap. 1976, pp. 27, 28,) which, it is claimed, controls this case, contained the sections making the deed *prima facie* evidence of the regularity of proceedings and of title, and in addition thereto it contained the following section :

" Sec. 63. No suit or proceeding shall be commenced by a former owner or claimant, his heirs or assigns, or his or their legal representatives, to set aside any deed made in pursuance of any sale of lands for taxes, or against the grantee in such deed, his heirs or assigns or legal representatives, to recover the possession of said lands, unless such suit or proceedings be commenced within one year after the recording of such deed in the county where the lands lie, except upon the grounds that the said lands were not sub-

ject to taxation, or that the taxes were paid or tendered, together with the expenses chargeable thereon before sale, and the recording of such deed shall be deemed such assertion of title, or such entry into possession by the grantee, his heirs or assigns, as to authorize such suit or proceedings against him or them as for an actual entry: *Provided*, That infants, persons of unsound mind or under guardianship, or imprisoned, may commence such suit or proceedings within one year after such disability shall cease.

" Where land is bid off by the Collector for the State the tax certificate shall be issued by the Collector to the State, in the name of the Comptroller, and if the land is not redeemed within the time specified by law, the State shall be entitled to a deed for the same, to be issued by the County Clerk in the manner provided by law, and said deed shall be issued to the State. The validity of any sale for taxes under this act, or of any title acquired by, through or under such sale, shall only be affected or questioned by alleging and proving that the property sold was not subject to taxation, or that the taxes had been paid before such sale, or that the property so sold had been redeemed according to law."

This suit was commenced " within one year after the recording " of these deeds, and for that reason the portion of the several sections of the act for the assessment and collection of revenue, which limit the right of action after the expiration of one year from the recording of the deed to cases where the land was not subject to taxation, and others therein enumerated, are not applicable here.

In this case the Judge was requested to charge that a deed " was *prima facie* evidence of title, and an attack upon the regularity and validity af the sale is confined to proving that the property was not subject to taxes, or that the taxes had been paid previous to sale, or that the property

had been redeemed." This he refused to do, and his action is assigned as error.

By reference to the 63d Section of Chapter 1976, Act of February 17, 1874, it will be seen that the last portion of it provides in terms that the validity of a tax sale or of a tax title can only be affected by proof of the facts named in this instruction.

That a tax deed under our statute is *prima facie* evidence of regularity in the proceedings to the date of the deed and of title cannot be questioned.

Numerous authorities sustain this power in the Legislature. There can be no doubt that the power to tax is an essential element of sovereignty, nor can it be questioned that the sale of the property of a defaulting tax payer, had in the manner prescribed by law, is not depriving such person of his property without due process of law.

We not think, however, that the last clause in the section mentioned can be construed in a manner to justify the instruction asked. In a previous section of this act (Sec. 60) the Legislature had expressly declared that such deed should be *prima facie* evidence of title, and in the first portion of the section in which this general and apparently unlimited enactment is made, the Legislature had limited the actions to recover, when brought one year after the recording of the deed, to cases where the lands were not subject to taxation, or the taxes had been paid or tendered, together with the expenses chargeable thereon before sale.

With the construction contended for we therefore have the Legislature enacting in the same section that one year from the recording of the deed must elapse before the action is limited to the grounds named, and also enacting that the section is thus restricted before the year expires, or the deed is recorded. To give the arbitrary construction contended for, therefore, practically repeals the

clause making the deed simply *prima facie* evidence of regularity before the expiration of the year from the recording of the deed, and at the same time does away with the requirement to record, because it gives the deed like effect whether recorded or not.

We are thus met with a clear, plain inconsistency in this statute. If the last clause of section 63 is to be effective according to its letter, then the first portion of that section requiring the record of the deed and the expiration of a year, and that portion of section 60 which makes the deed *prima facie* and not conclusive evidence of regularity in the proceeding are useless, are surplusage, simply disfiguring the system contemplated by the Legislature. We must give effect to the intention and purpose of the Legislature in the enactment, if within legislative power. A construction which gives the latter clause of section 63 the effect to repeal the first part of that section and the first part of section 60 we think would be inconsistent with the policy of this and other States in the matter of statutes of this character, and independent of the question of the constitutionality of the clause construed according to its letter, our view is that the antecedent inconsistent clauses must be given effect to so limit and restrict the operation of the last clause of section 63 as to permit the full operation of section 60 and the first part of section 63. In other words, where the last clause of a section of a statute is plainly inconsistent with the first portion of the same section, and another preceding section and this section and part of section conform to the obvious policy and intent of the Legislature, the last clause, if operative at all, must be so construed as to give it an effect consistent with the other sections and with the policy they indicate. Thus construing the last clause of section 63 and the first part of sections 63 and 60, the only effect we can give the clause of section 63 is to limit it by

the first clause of the same section. In other words, the provisions that the validity of the sale or title cannot be questioned, otherwise than by the matters enumerated, is restricted to cases where the deed has been recorded and the limitation has become operative as enacted in the beginning of the section.

We cannot think that the Legislature, after plainly giving the right to contest the regularity of the proceedings at any time before the expiration of the time fixed for the limitation to the action, intended by general terms used in the last clause of section 63 to deny this right.

As to the power of the Legislature to thus limit the action of the claimant of the land we say nothing, as that is not this case. We simply say that the effect of the last clause of section 63, if effective for any purpose, is as stated, and not as is apparently contended for by the appellant. In other words, that it does not make the deed before it is recorded for one year conclusive evidence of the regularity of the proceedings in all other respects than those excepted, and that as the deeds here were not recorded for the length of time required, no question as to the constitutionality of the act in this respect is involved in the case.

We think, for the reasons stated, that the court properly refused this instruction.

The tax deeds here introduced are declared by the statute to be "*prima facie* evidence of the regularity of the proceedings from the valuation of the land by the Assessors to the date of the deed inclusive and of the title to the purchaser." The decisions sustain the power of the Legislature to establish this rule of evidence. Such a statute takes away no substantial right, and emanates from the unquestioned power of the Legislature over the subject which it regulates, the method of proceeding in the introduction of evidence. Pillow vs. Roberts, 13 How., 472;

Williams vs. Kirtland, 13 Wall., 306; Freeman vs. Thayer, 33 Maine, 76; Hand vs. Ballou, 12 N. Y., 541.

The deeds being *prima facie* evidence of regularity and title, the next question which we reach is, was the testimony of the plaintiff in this case such as to shift the burden of proof upon the defendants, and if it was, did the defendants prove a compliance with all the essential requirements of the statute.

The plaintiffs maintaining that a record of the advertisement of the tax sale in the office of the Clerk of the Circuit Court was essential to its validity offered the Clerk of the Circuit Court to prove that no such record was in his office.

This witness testified that some time before the trial he had examined the records and did not think that there was any record of the tax sale for State and county taxes for the year 1873, but he was not certain, and would prefer to examine the records again before he could testify positively that there were no such records made in his office.

Is this testimony of such character as to shift the burden of proof as to this fact? The rule as announced by Judge Cooley in Wright vs. Dunham, 13 Mich., 414, is that the presumption of regularity which attaches to the deed must prevail in its favor until evidence is given of facts which show irregularity, and that it is not enough to prove facts from which an inference of irregularity may be drawn.

The evidence must be such as to exclude any reasonable presumption of regularity. The presumption must prevail until plaintiffs show facts inconsistent with it. Case vs. Dean, 16 Mich., 38; 4 Mich., 158.

The evidence here of the clerk is to the effect that he had, at a previous date, examined the records, and did not think there was any record of the tax sale, but he would not testify positively before he made another examination.

The search that he made, it is evident, was not thorough, and he did not and would not say that there were no such records · in his office. This evidence is clearly insufficient to destroy the presumption of regularity, and to the extent that the jury based their verdict upon it, their finding was erroneous.

Whether it was essential to record such advertisement we do not determine. It is not here proved that it was not recorded.

The other objections urged are, that there was no warrant to sell; that the land was improperly described, and that the record showed that the tax had been paid. The assessment book is before us. It has a warrant drawn as the statute requires. The description of the land is sufficiently certain, looking to the entire roll to show what is intended, and we cannot, after a most careful examination of the record, see any evidence even intimating payment of the tax. Another objection made in the brief of respondents is that the evidence shows that when the sale was had Mollie and Rebecca Sams were living with Lloyd Peck, and that he was reduced to a state of imbecility from strong drink and long and continued sprees.

We find no such testimony in this record. Another objection is that there was a trust relation existing between the parties. It is only necessary to refer to the testimony as it appears in the case as stated and in the bill of exceptions to say that there was no evidence of any such relation. Another objection urged is that the time limited in the warrants attached to the assessment books had expired before the tax sales were made. There is nothing in this objection.

A warrant specifying the time in which payment of sums collected are to be paid over does not prevent the officer from continuing his duties and enforcing by sale his collections

thereafter.   Hilliard on Taxation, 405 ; Homer vs. Cibley, 14 N. H., 99 ; Smith vs. Messer, 17 N. H., 420.   In 14 N. H., Parker, C. J., in the case cited, says : The direction to make a return by a particular day did not terminate the authority to collect the tax.   It cannot be considered as having any further effect than a direction to return the warrant by that time.

It is insisted also that the deeds " were not upon their face in accordance with the tax certificates of such sales as were therein recited, and that the clerks of the county and city had assumed judicial functions in determining that Mollie Sams was entitled to tax deeds as the alleged heir at law of Josephus Sams and Sallie Sams, the latter having been the purchaser at the tax sales."

The tax deeds alluded to recite the purchase by Sallie Sams, her death, leaving surviving her Josephus Sams, her heir, and his death, leaving Mollie Sams, his heir, surviving.   She was the party to whom the deed was to be made by the officer whose duty it was to make it.   Under the statute the clerk was required to make to the person purchasing, his heirs or assigns, the deed, and his act here in this respect was entirely regular.   What may have been the result if, in fact, she was not the heir entitled to the deed under the statute, is a question not here presented. We are unable to see the ground of this objection.   If the power of the Legislature to impose this duty is denied, we have to say that the duty imposed upon the clerk here belongs to a class of duties which the Legislature can, in the exercise of its power to regulate proceedings in the collection of taxes, impose upon the clerk.   It is incidental and necessary to the exercise of this legislative power, and his making a tax deed to one as the heir of another, as directed by the Legislature, is not a judicial determination in the sense that it is the act of a court having jurisdiction to ad-

judicate that question.   If the deed is given to one not the heir, the act does not bind the true heir, nor can the act of the clerk be conclusive against any one having a right to enquire into the fact.

Another objection is that the tax deed of the city should have been in the name of the State.

It is true that the first clause of Section 62, of the Act of 1874, contains general language to that effect, but the whole section must be construed together, and the subsequent portion of the section and Section 61 show that this requirement is restricted to deeds to be signed by the County Clerk. The section which regulates the form of the tax deeds of cities, requires the Clerk of the City to execute them " *substantially* " in the form prescribed by the law for deeds of the State, and the deed of the city (for it is the deed of the city, and not of the State,) is properly executed in the name of the city by its clerk.

It is also insisted that the tax deed of the State is void because it is executed by the Clerk of the Circuit Court instead of the County Clerk.   By reference to the Constitution, Art. 6, Sec. 17, it will be seen that they are one and the same officer.   The only officer known to the Constitution and the laws that the Legislature could have intended to designate by these terms was the Clerk of the Circuit Court, who is also Clerk of the County Court and of the Board of County Commissioners.

We have disposed of all questions which arise in the case in reference to the deeds of Mollie Sams.   So far as the deed to Myerhoff is concerned the objections urged to it are disposed of so far as presented by the record by what is said in reference to the tax deeds to Sams and what follows in this opinion.

Defendants in this case offered to prove that Sallie Sams and Lloyd Peck at the time of the tax purchase were in-

debted to them for services and attention. The court excluded the testimony and this is excepted to. Because one man owes another money is certainly no reason to sustain a sale of the property of the party owing the debt for taxes. The court very properly excluded such matter.

From what has been said it is apparent that the verdict of the jury here was clearly contrary to the evidence, when given its proper legal effect. There were a number of charges and exceptions thereto. Without going into any lengthy examination of them, for it is unnecessary, we will only say that while they may or may not be technically correct as applied to the various matters of law to which they are applicable, still the court fails to charge with accuracy upon the two questions involved, viz: the nature and degree of proof which a plaintiff in ejectment must produce to overcome the presumption of regularity of proceedings anterior to the tax deed and of the title of the purchaser which attend a tax deed under the statute.

The judgment is reversed and the case is remanded, with directions to set aside the verdict and award a new trial.