Spear, J.
One question only is presented. That is, when does the term of commissioner Eirick expire? ■ Is it September in the year 1907, or December in-the year 1908? The proper answer to this question requires a construction of the act of April 2, 1906, 9% Ohio Laws, 271. . That act is entitled: “An act to conform the terms of office of various state and county officers to the constitutional provisions of biennial elections.” Bearing on the office of commissioner it is in the first section provided that the existing terms of office of such officers which would otherwise expire in any even numbered year are extended to the following dates respectively of the odd numbered year next succeeding the time when they would so otherwise expire, viz.: member of the board of county commissioners to the third Monday in September. Incumbents at the time when said existing terms would otherwise expire shall continue to hold and enjoy the same until the expiration of said respective terms as so extended. At any ■election for state and county officers hereafter held, *366 successors to all such officers whose terms will expire during the odd numbered year next succeeding the holding of such election, shall be elected for terms to commence at such time during such odd numbered year as is provided by law, and to continue: county commissioners, two years. Provided that the term of office of any such officer expiring in the year 1906, whose successor was elected prior to the passage of this act, shall not be extended.
The second section provides for the repeal of certain sections of the Revised Statutes, and then, with respect to commissioners, makes this provision: “Sec. 839. The board of county commissioners shall consist of three persons, to be elected biennially, who shall hold their office for two years, commencing on the first day of December next after their election.”
It is apparent that there is a conflict between the last clause fixing the first day of December next after the election as the time when the commissioner will take office and the provision in the first section fixing the third Monday in September as the time, for it is impossible to extend the term of the officer whose term would expire in an even numbered year to September of the next odd numbered year without interference with the term of the one who enters upon the office December 1st after the election. In this condition of the statute which provision should prevail?
The time for holding elections for state and county officers is indicated, and the power to extend terms to conform thereto is given by the recent amendment to the constitution, adopted November 7,1905. Section 1 of this amendment (Art. XVII), requires such elections to be held on the first Tuesday after the *367 first Monday in November in the even numbered years, and section 2 gives the general assembly “power to so extend existing terms of office as to effect the purpose of section 1.” Section 3 provides that “every elective officer holding office when this amendment is adopted shall continue to hold such office for the full term for which he was elected, and until his successor shall be elected and qualified as provided by law.”
Significant features applicable to this case are to be emphasized: (1) the election for commissioners can be held only in the even numbered years; .(2) the term of the incumbents then (November 7,1905), in office cannot be abridged, and they may hold -until their successors are elected and qualified, and (3) the power to extend terms is given only to effect the purpose of the provision for biennial elections.
Two opposing contentions arise with respect to the statute, one that the general purpose of the act is .better subserved by giving effect to the first section and discarding that provision of the second section which fixes December 1st as the date of the commencement of the term, and the other that the latter provision, being the last expression of the legislative will because coming later in the act, and being expressed in clear, unmistakable terms, should control in this respect. The authority cited to us supporting the claim of counsel with respect to the controlling effect of a later clause in an act is Hand v. Stapleton, 135 Ala., 156, the third section of the syllabus of which is: “As between conflicting sections of the same act, the last in order of arrangement will control, and such conflict or inconsistency will not nullify the entire enactment where the intention of the legislature can be effectuated by *368 giving effect to the latter section and others in harmony with it.” Looking to the case we find that the act in question was one to remove a county seat. It was attacked as violating a clause of the constitution which provides “that no power of suspending laws shall be exercised except by the general assembly. ’ ’ The first section of the act purported to unconditionally remove the seat from its then location to another named while the tenth section made the removal conditioned that the commissioners appointed should ascertain that the amount realized from certain subscriptions, in addition to the amount that might arise from the sale of the present court house and jail and the real estate owned by the county, will be sufficient to erect the new buildings so as not to require an increase of the present tax rate of the county. The court was of opinion that, viewing the whole act, it was the intention of the legislature that the court house and jail were only to be removed in the event that new buildings could be erected upon the land at the new site to be donated and without increasing the tax rate, a conclusion' which seems entirely obvious. The question therefore was, could the act be enforced giving effect to all its provisions, and that reached the question whether the act could be made to take effect upon the happening of certain events in the future. Thereupon the court held in the first paragraph of the syllabus that “the legislature may pass a valid statute, to take effect upon the happening of a future event, and may delegate to an officer or person the power of determining and announcing whether such event has happened,” and sustained the act as so construed. ' The case seems hardly to fit the crux of our case. It was easily determinable *369 by the rule announced in the last quoted paragraph of the syllabus, which is the same principle which is invoked in our local option legislation and which was applied in the case in this court concerning township local option, Gordon v. The State, 46 Ohio St., 607. The real intent of the legislature seems not hard to arrive at without reference to the location in the act of the proviso as to its taking effect.
The text-books cited give all sides of the proposition. Endlich on Int. of Stat., sec. 183, after stating that where there is an irreconcilable conflict as between clauses, the one last in order of local position will prevail, and citing some authorities which are supposed to sustain it, adds this: “And it has been seen that a reading of the provisions of the whole statute together may give to earlier sections the effect of restricting the meaning of later ones, as well as to the latter the effect of restricting the operation of the former.” Sutherland on Stat. Con., 2nd ed., sec. 349, gives the conclusion that in case of irreconcilable conflict the provision which is latest in position repeals the other, and cites a number of cases, some of which it is fair to say give support to the author’s conclusion. And yet others give support in appearance only. Farmers’ Bank v. Hale, 59 N. Y., 53, is much relied upon by the author. The action was a suit upon a note to which the defense was usury, and the issue depended upon the construction of the statute of that state respecting interest which had conflicting clauses, in which the later was held to be a proviso and its use to qualify and restrain the general provisions of the act. In the opinion Church, C. J., says: “When different constructions may be put upon an act, one of which will accom *370 plish the purpose of the legislature and the other render it nugatory, the former should be adopted; but when the provisions of an act are such that to make it operative would violate the declared meaning of the legislature, courts should be astute in declaring it inoperative.” The rules given in the syllabus are: “Where the intent and meaning of a statute is expressly declared by a provision therein,, to carry out that intent all other parts of the act must yield. A proviso in an act repugnant to the purview thereof is not void, but stands as the last expression of the legislative will. Where the provisions of an act are such that to make it operative would violate the declared meaning and intent of the legislature, it will be construed as inoperative.” The fact that the clause in dispute was found later in the act does not appear to have had any special bearing on the subject, save that it was treated as a proviso and thus the whole act given effect. It is held in Gibbons v. Brittenum, 56 Miss., 233: “Differences of time are to be disregarded in construing apparently conflicting provisions of - the code, if by disregarding them, and looking at the work as a whole, harmony can be thereby produced. But if, after exhausting every scheme of reconciliation, there remains a palpable and irrepressible conflict in the provisions of the code, the court is compelled, in the absence of anything else indicative of the legislative will, to determine it, to adopt the latest declaration thereof. The code is to be regarded as a whole, established uno flatu; and in order to harmonize apparently conflicting provisions, the court will look through the entire work, and gather such assistance as may be afforded by a complete survey of it. Its many sections are to be *371 heldi as. parts of a single statute, which must be made to harmonize, if possible; but if there be an irreconcilable conflict in its parts the section last adopted must prevail.”
Attention is called to a number of decisions which appear to be somewhat of opposite tenor. In McCormick v. Village of West Duluth, 47 Minn., 272, the action was brought to restrain the issue of certain bonds of the village on account of a local improvement. In section 8 of the act it was provided that the bonds shall be made payable in five equal annual instalments, the first maturing one year from the date of the bonds, while by a later clause of the same section it was provided that the bonds shall be made payable at the option of the village after five years, and absolutely at the expiration of seven years, two apparently irreconcilable clauses respecting the character of the bonds. The rule that the clause found last in the statute must govern, and the earlier one declared nugatory, was invoked, but the court, taking the view that the first clause expressed the legislative intent, held that “where the first clause in a section in an act of the legislature conforms to the obvious policy and intent of the legislators, as elsewhere indicated in the act, it is not rendered inoperative and void by a later inconsistent clause which does not conform to this policy and intent. In such cases the later clause is .nugatory, and must be disregarded.” In K. P. Ry. Co. v. Commissioners, 16 Kan., 587, it is held that: “Where there is no way of reconciling conflicting clauses of a statute, and- nothing to indicate which the legislature regarded as of paramount importance, force should be given to. those clauses which would make the statute in harmony with the *372 other legislation on the same«subject, and which would tend most completely to secure the rights of all persons and parties affected by such legislation.” In Sams v. King, 18 Fla., 557, it is held that: “Where the last clause of one section of a statute is plainly inconsistent with the first portion of the same section and with another preceding section of the statute, and this section and part of section conform to the obvious policy and intent of the legislature, the last clause, if operative at all, must be so construed as to give it an effect consistent with the other section and part of section, and with the policy they indicate.” See, also, Delk v. Zorn, 48 S. C., 149, and Link, Treas. v. Jones, 15 Col. App., 281.
From this view, and upon principle, we reach the conclusion that there is no hard and fast rule which inquires a court to give controlling effect to one provision of an act simply and only because it is found later than other provisions bearing upon the same subject; that the rule giving the later clause controlling effect is purely arbitrary, springing rather from the necessity of some rule in peculiar cases than upon any sound reason, and is not to be applied to the defeat of the manifest purpose of the lawmakers where that purpose can be gathered from the context. We are therefore remitted to an ascertainment of the policy and intent of the legislature by a construction of the entire act.
This situation, which presents two irreconcilable provisions respecting the time when the commissioner will take office, probably arose from the undue haste which characterized much of the late work of the session, and appears, as was stated by counsel at the oral hearing, to be a case of too many cooks. *373 Such, legislation is sometimes held wholly inoperative, and were the subject-matter of minor interest we would be disposed to hold in this case that the number of cooks had spoiled the broth utterly. But it is not a matter of minor interest but of general interest reaching as it does to every county of the state, and affecting vitally the conduct of each county’s business, and it undoubtedly is the duty of the court to endeavor to give effect to the act in one way or the other. Which construction, therefore, will more nearly effectuate the purpose. intended, and which will be freest from objection in the practical working out of the law?
It is apparent that the general assembly was undertaking to provide for an emergency. It had been given by the recent constitutional amendment, what had been denied to it before, the power to extend existing terms, where necessary, and possibly to the extent of exceeding, in a case of over-weaning necessity, the constitutional limit. But that power was restrained by the amendment itself to what should be necessary to effect the purpose of the first section of the amendment which is to provide for biennial elections, and to fix the time of such elections with respect to state and county offices, viz.: in November of the even numbered years. This condition seems to have been fully comprehended by the general assembly, for the title of the act is “to conform the terms to the constitutional provision of biennial elections.’’ This indicated the character of the emergency to be met. It is' true that the title is not part of the act yet it may be resorted to when the intent is in question; As held by Hitchcock, J., in Steamboat Monarch v. Finley, 10 Ohio Rep., 384: “It may well .be considered in its con *374 struction as furnishing an index ,by which doubtful matters in the body of the.statute may be settled. Especially is this proper where, as in this state, the title is prefixed by a solemn vote of the legislature passing the law. ’ ’ To this may be added the requirement of section 16 of article 2 of the constitution, that: “No law shall contain more than one subject which shall be clearly expressed in its title. ’ ’ We are aware that this provision is regarded as directory and not mandatory, so that a court will not sit to inquire whether an act is rendered unconstitutional because of the failure to observe it, yet a presumption still remains that the general assembly will not intentionally depart from a constitutional direction, but, out of a sense of duty and by reason of their official oaths, the members will endeavor to conform their legislation to all provisions, of the constitution. This clearly bears upon the question of intent. See, also, with respect to the effect of purpose expressed in the title, Harris v. State, 57 Ohio St., 92, and Burgunder v. Weil, 60 Ohio St., 234.
It would follow, if the foregoing test is the proper one as to intent, that the construction of the act in question which operates the more reasonably and with the closest adherence to the limitation upon the power to extend terms, is the one that should be adopted. With this in mind let us contrast the results as to extension of terms and other incidental results which would be worked out in a practical application of each construction. The commissioner-elected in 1902, and whose three-year term expires September of this year, passes out by virtue of the statute; so we are not concerned with him. Assuming that there is to be no election in *375 1906, and that the terms are to begin December 1. The proposition of the defendant is that the statute itself works an extension of Eirick’s term from September, 1907, when it would expire if not extended, to December, 1908, one year and about three months. If this be so then the same rule would work an extension of the term of the commissioner elected for three years in 1904, and whose term but for such extension would expire September, 1908, to December, 1908, about three months. Also an extension of the term of the commissioner elected for three years in 1905, and. whose term if not extended would expire September, 1909, to December, 1910, one year and about three months. And, since this commissioner would remain in office until December, 1910, it would follow that but two could be elected in 1908, for otherwise, the term of the one elected in 1905 would be abridged, which the legislature may not do. It 'would follow further that the two elected (for two years) in 1908 and the one elected; in 1905, whose term had been extended, would constitute the board, and that the expressed legislative purpose to elect three at a time could not be carried out until the election of 1910.
But the statute does not extend the. term of the commissioner elected in'1903. As hereinbefore stated the statute,-section 1, provides for the extension-of the terms of officers whose term would otherwise expire in any even numbered year; the term of the commissioner elected in 1903 (Eirick) will expire in an odd numbered year, viz.: 1907. Nor is' the term of the commissioner elected in 1905 extended.' Such extension is not made by the statute because that officer’s term will expire in an odd numbered year. It is not made by the constitutional amendment *376 because that provides for tbe extension of the terms of only those “holding office” at the time of its adoption. And there being no provision for the election of a commissioner to fill the interim between September, 1909, and December, 1910, the result of fixing December 1st as the time for the commencement of terms will be to create a vacancy to be filled by appointment. This the general assembly has no power to do. State ex rel. v. Heffner, 59 Ohio St., 368; State ex rel. v. Beal, 60 Ohio St., 208.
Now take the other proposition, which assumes that a commissioner is to be elected this year. By it the term of the commissioner elected in 1903 (Eirick), would expire by its own limitation September, 1907, and he would give way to a successor elected in November of the present year. This would result in the extension of the term of the one who was elected in 1904, and which but for the extension would expire in September, 1908, to September 1909, just one year. It would require no other extension of term, but would cause this commissioner’s term to expire contemporaneously with that of the one elected in 1905, for three years, and of the one to be elected the present year for two years. It would also avoid the result of creating •.vacancies. It would also give effect-to two of the provisions of section 839, as amended, viz.: that which directs that the three commissioners shall be elected biennially, for the term of two years, and would, at the earliest possible date, give full effect to the provision by an election of the three at the .same election, while it would ignore only the provision ■ for the fixing of the beginning of terms. Again it would effectuate the purpose of that clause of section one of the act which provides that at any *377 election thereafter held successors shall be elected to those whose terms will expire during the odd numbered year next succeeding the holding of such election, a purpose clearly indicating that, as Eirick’s term will expire in September, 1907, his successor should be elected in 1906.
It seems to us that the construction which requires an election of commissioners this year is the more reasonable one, as it works fewer changes than the other and fewer extensions of terms, and is in accord with the expressed spirit of the constitutional amendment, and with the dominant purpose of the general assembly expressed in the title of the act and in the immediate succeeding provisions. It also avoids conflict with the provision of the late constitutional amendment that the term of office of all county officers shall not exceed four years. The extension of Eirick’s term to December, 1908, would cause him to serve more than four years, and would thus be in conflict with the spirit of the above limitation. We are not required here to determine whether or not in any case the general assembly could, by force of section 2 of the constitutional amendment, extend the term of any officer so that he would serve beyond the limit fixed by the constitution, but it would excite surprise to find two contradictory provisions respecting the same subject in the same section of the same article. And it is not unreasonable to hold that at least the necessity for extension beyond the limit fixed in the constitution should be apparent and the purpose to do so should be expressed by an act the entire language of which respecting that subject is free from serious doubt.
It is insisted by the eminent counsel for defendant that the first section of the act should be disregarded *378 because unnecessary, the/constitutional amendment fully covering the object sought. In this we think the learned counsel is mistaken. The subject is not adequately covered, if at all, by the constitutional amendment. The provision of section 3- is that “every elective officer holding office when this amendment is adopted shall continue to hold such office for the full term for which he was elected and until his successor shall be elected and qualified as provided by law, ’ ’ clearly implying that it is incumbent upon the general assembly to so provide. Failing that, the effect of the constitutional amendment would seem to be to give the newly elected officer the right to succeed to the office so soon after the election as he could secure a commission, a result involving much confusion and surely riot intended by the constitution.
It is further insisted that the first of December was inserted in the act by amendment because it was considered that it would be little less than a public calamity that a board of commissioners defeated in November, because their acts were unsatisfactory, should be continued in office for ten months longer, and if the commencement of terms is not changed now it cannot be done except by an amendment to the constitution. Of course this presents a legislative consideration. We can’t know what special purpose or desire entered into the minds of the members who voted for this alleged amendment, and it wouldn’t be any of our business if we could. We must construe the law by a consideration of its language. We doubt, however, that the situation is in fact so grave as feared by counsel, and it is not perceived that the general assembly might not, if the necessity continues to commend itself to its mem *379 bers, remedy the trouble by an act changing the date of the commencement of terms, and providing for the election of officérs to hold ad interim.

The demurrer to the ansiver will be sustained and the tvrit awarded.

Shauck, C. J., Price, Crew, Summers and Davis, JJ., concur.