FLORIDA SAVINGS BANK AND REAL ESTATE EXCHANGE, APPELLANT, VS. JOHN A. BRITTAIN ET AL., APPELLEES.

1. When a certificate of sale for taxes is issued to one person, and the tax deed is made to another, there must be some evidence that the certificate has been assigned by the original purchaser. A memorandum at the bottom of the deed, below the signatures of the clerk and witnesses, with no intelligible indication that it was a part of the deed, is not evidence of the assignment.

2. The city tax roll is proper evidence to show whether the land described in a tax deed was embraced in it and duly assessed for taxes.

3. The law in force in 1874 required that a warrant should be issued to the Collector of City Taxes. His authority to enforce payment of such taxes by sale of property is derived from the statute controlling the levy and collection of State taxes.

4. A deed of land sold for unpaid city taxes is properly made in the name of the city as grantor under the laws in force in 1876.

5. Where in a suit in ejectment by a tax purchaser a deed purporting to have been made in pursuance of a sale for taxes under the act of 1874 is presented as evidence of title, and it is shown that no tax was imposed upon the property, the deed carries no right of action to the grantee as against the former owner, his heirs or assigns in actual possession. In such cases the limitations mentioned in Section 63, Chapter 1976, Laws of 1874, of causes for which a tax deed may be impeached, do not apply.

Appeal from the Circuit Court for Duval county.

The facts of the case are stated in the opinion.

*Geo. Wheaton Deans* for Appellant.

*A. W. Cockrell* for Appellees.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

This was an action of ejectment brought by appellant

against respondents to recover lot one, in block 133, in the city of Jacksonville. Defendants pleaded not guilty. Verdict and judgment for defendant, and plaintiff appealed.

At the trial plaintiff offered in evidence a tax deed dated January 10, 1880, executed by the clerk of the city, conveying the "south half lot 1, block 98 or 133," to plaintiff under a tax sale made by the City Collector, March 8, 1877, for the taxes of 1876, the city being the purchaser. Defendants objected to the introduction of the deed on the ground that it did not appear therein that the certificate of sale had been assigned by the city to the plaintiff, the words reciting that the certificate had been " assigned *by the Mayor* of the city" being contained in a memorandum at the bottom of the paper, below the signatures of the clerk and witnesses, and there was nothing in or upon the paper to show that this memorandum was a part of the deed, there being simply a line drawn from a point on the margin of the body of the writing down to the memorandum, without other explanation. The court sustained the objection. The further objection that the city could not legally be the purchaser at a tax sale was not sustained by the court.

As to this deed, the only question presented by the exceptions of plaintiff rests upon the exclusion of the paper for the reason that it did not show that the certificate of sale had been assigned by the city, (in whose name the property had been bid off,) to the plaintiff.

Upon an inspection of the original deed, sent up by the court for that purpose, our judgment is that the memorandum at the bottom, below the signatures of the clerk and witnesses, is not a part of the deed. There is no asterisk or other indication in the body of the deed showing where the words at the bottom should be inserted, or that they belonged in or were intended to be read as a part of the pa-

per executed. There is no interlining or alteration apparent; nor does it seem that if the memorandum had been written by a third person in the absence of the parties to it, the act would have been a forgery. Whether, if the words of the memorandum had been inserted in the body of the deed, there would be sufficient evidence without other proof of the authority of the Mayor to assign the tax certificate, may be a matter of doubt. But the court ruled correctly in excluding the deed, because the city was the purchaser at the tax sale, and there was no evidence in the deed, or apart from it, that the certificate had been assigned.

The plaintiff then offered in evidence a deed dated September 5, 1876, executed by the Clerk of the City of Jacksonville, whereby the city conveyed to plaintiff lot 1 in block 133, the lot having been sold on the fifth of April, 1875, for the unpaid taxes levied in 1874, the plaintiff having been the purchaser at the sale. This deed was admitted without objection, and read. Plaintiff rested, and defendants introduced and proved the assessment book of the year 1874, and offered it in evidence to prove that there was no warrant issued by the Assessor for that year to the Collector for the collection of any taxes assessed; and that there was no assessment of the premises for the taxes of that year.

Plaintiff objected to the book as evidence for the purpose stated, and that the evidence offered was not material. The objection was overruled, and the book admitted.

There was no warrant annexed to the book, or contained therein, signed by the Assessor, directing the Collector to collect the taxes therein mentioned, but the book contained a certificate of the City Assessor in the usual form that the book contained the assessment and valuation of property liable to be taxed.

The Judge charged the jury as follows: "If the jury find from the evidence that there was no warrant annexed to the assessment roll for the taxes of 1874, delivered to the City Collector, then they will find for the defendant." This was duly excepted to.

The jury rendered a verdict in favor of the defendant, upon which judgment was entered.

The assessment book was offered in evidence for two purposes, one of which was to show that the lot in question was not assessed for the taxes of 1874 ; and the other was to show that no warrant had been issued to the Collector.

One of the questions presented in argument was whether the tax deed should name the State of Florida or the city as the grantor, it being contended by respondent that as this deed is not made in the name of the State, but in the name of the city, it is not the deed prescribed by law, and is void.

The act of 1869 providing for the incorporation of cities authorized the election of an Assessor and Collector of City Taxes. It also authorized the raising by tax and assessment upon all real and personal property of the money necessary to carry on the city government, "and to enforce the receipt and collection thereof *in the same manner*" provided by law in relation to State taxes. Sections 23, 24.

The Revenue Act of 1874, ch. 1976, made it the duty of the Collector to collect taxes by levy and sale of real and personal property. Sec. 42. And section 56 directs the Tax Collector of a city to proceed substantially in the same manner in the collection of taxes and sale of lands for the non-payment of taxes as Collectors of Revenue; and section 61 directs the Clerk of the City to make deeds for lands sold for unpaid taxes substantially in the form to be used by the County Clerk, as provided by section 60.

The Revenue Act of 1874 required the County Assessor

to annex to the assessment roll delivered to the Collector a warrant directing him to collect the State and county taxes. In The State vs. Rushing, 17 Fla., 223, and in Donald vs. McKinnon, *ib.*, 746, this court held that in the absence of a warrant to the Collector of Revenue he was not authorized to make a sale, and the sale would pass no title.

The twenty-third section of the act of 1869 authorized and required the City Council to enforce the receipt and collection of taxes " in the same manner " as provided by law for the assessment and collection of State taxes. If this has any meaning, it is that the city authorities shall employ substantially the same machinery for such purposes as was provided in the case of State taxes. This included an assessment by an Assessor, in which duty he is required to make a list of taxable property with a valuation thereof, in the name of the owner if known, and to apportion the due quota of taxes to each parcel of property, and to issue a warrant addressed to the Collector, directing him in the name of the State to collect the taxes set down in the assessment roll against the names of the owners and the property. This is the Collector's authority to collect.

The proper conclusion is that a warrant is a necessary part of the machinery for the collection of city taxes, because it is necessary in the case of State and county taxes ; and that the instruction to the jury in this respect was correct.

As to the objection urged in this court that the deed is not in the form prescribed by law, in that the city is the grantor, and the form of deed as given in the act of 1874 reads that the State of Florida grants the land, section 62 of the act says : " All tax deeds shall be issued in the name of the State, shall be signed by the County Clerk, shall be witnessed by two witnesses, and the seal of the County Court attached thereto." Section 61 reads that " the Clerk

of the City shall make the deed for lands sold in the city for the non-payment of city taxes, and not redeemed, substantially in the same form " as provided in the case of deeds for State and county taxes.

In this case the deed is found to be *substantially in the same form.* The 61st section applies only to deeds for unpaid city taxes, and section 62 applies only to deeds for unpaid State and county taxes. In the one case the city is the proper grantor, and in the other the State is the grantor. We held this in Sams vs. King, 18 Fla., 557, 572, and we find no reason for doubting the correctness of the conclusion.

By the statute a deed in due form duly executed, for the non-payment of taxes, by the proper officer of the city or the county, is *prima facie* evidence of title in the grantee. Sams vs. King, *supra*, 566.

The question next presented is whether the assessment book, which has been sent up for inspection, contains evidence that the lot in question was duly assessed, and a tax levied so as to constitute a charge upon it, and authorize a sale for non-payment. The entries in the assessment book are as follows, on page 47 : " Name of owner, F. M. Richard. No. of block, 133 or 98. No. of lot, 1. Valuation, 250." There is no tax set down against it. In another part of the book, some thirty pages intervening, we find this entry: " F. M. Richard. Valuation of real estate, 250. Total, 250. Amount tax; 5.00, paid by sale," without designating the real estate chargeable with the tax.

The 63d section of Chapter 1976, Laws of 1874, provides that the recording of a tax deed made in pursuance of any sale of lands for taxes, shall be deemed such assertion of title, or such entry into possession, as to authorize suit or proceedings against the purchaser as for an actual entry. But no such suit or proceeding shall be commenced by *the former*

*owner or claimant,* his heirs or assigns, or his or their legal representatives, to set aside a deed made in pursuance of any sale of lands for taxes, or against the grantee in such deed, his heirs or assigns or legal representatives, to recover the possession of said lands, unless such suit or proceedings be commenced within one year after the recording of such deed in the county where the lands lie, except upon the grounds that the said lands were not subject to taxation, or that the taxes were paid or tendered, together with the expenses chargeable thereon, before the sale, or that the property so sold had been redeemed according to law. See Sams vs. King, 18 Fla., 568.

The present case is ejectment, not by the *former owner or claimant,* against the holder of a tax deed in possession, or having been in possession, actual or constructive. What we have here is ejectment by the holder of the tax title against a party in possession under the owner, after the expiration of one year from the recording of the tax deed. I do not think the statute contemplates that the recording of the deed is to be held equivalent to an actual entry. Where the suit is by the holder of the tax title after the expiration of the year, except where the land can be the subject of an actual entry; and if the tax sale purchaser with a deed is not in possession, or has not been in possession, actual or constructive, (that is, such possession as follows legal title, in the absence of actual possession,) or has not had sufficient possession, actual or constructive, to confirm his right, his right of action against one in actual possession is not affected by this section. In other words, that under these circumstances his tax deed is evidence only *prima facie* of the regularity of the proceedings under section 60 of the statute. This being so, the evidence here as to the matter of the assessment was such as to vitiate the sale. It was not an assessment under the law.

There is no doubt of the power of the Legislature to make a tax deed, regular in form, conclusive evidence of the regularity of all the antecedent proceedings, including the matter of making a legal and proper assessment, and to enact that none of these questions shall be the subject of proof, after the expiration of a year from the recording of the deed ; and that the land owner shall have no cause of action except upon the grounds that the lands were not subject to taxation, or that the taxes were paid or tendered, together with the expenses chargeable thereon, before sale, or that the property so sold had been redeemed according to law. And I think that is what the Legislature has here enacted. The views expressed by the Supreme Court of the United States, in the case of DeTreville vs. Smalls, 98 U. S., 517, abundantly sustain this view. The act of Congress there construed declared that the Commissioners' certificate of sale for taxes should be evidence of compliance with the preliminary requisites of the sale, and that this evidence should be rebutted only by proof that the property was not subject to taxes, or that the taxes had been paid previous to sale, or that the property had been redeemed. The Supreme Court sustains the act, and remarks : " This left to the owner of land subject to the tax every substantial right. It was his duty to pay the tax when due. His land was charged with it by the act of Congress, not by the act of the Commissioners, and the proceeding ending in a sale was simply a mode of compelling a discharge of his duty." This is true of the act of the legislature here. The court says further: " All his substantial rights were assured to him by the permission to show that he owed no tax; that his land was not taxable ; that he had paid what was due, or that he had redeemed his land after sale. He was thus permitted to assert everything in substance, everything except mere irregularities." This

court further remarks that "of late the astuteness of judicial refinement has rendered almost inoperative all legislative provisions for the sale of land for taxes, and the consequence is that bidders at tax sales, if obtained at all, are mere speculators." We have nothing to do with the policy or propriety of the statute; that is with the Legislature. I do think, however, that legislation, or legislation so construed by the Judiciary, as really to vest no title under tax sale proceedings, has been tried, and has been found to be a failure. This fact I think the Legislature of this State, like the Legislatures of several other States, has recognized; and in this act we see an endeavor to give some force to a tax title, thereby securing bidders other than those notoriously for speculation; and also advising the citizen that he must pay his taxes, like all good citizens should do, or his property will be sold to some purpose. Such doctrines or views are eminently proper, because they are plainly right.

The sixty-third section, by its language and intent, can be made applicable only to a case where the former owner is proceeding to set aside the deed, or to recover the land from the tax purchaser, his heirs or assigns.

The judgment is affirmed.