## No. 10,123.

Mrs. Varina B. Gaither vs. T. K. Green, Tax Collector, et al.

The minutes of the proceedings of the Board of Commissioners of the Fifth Levee District, wherein a five mill district levee tax appears to have been levied, are to be taken as of unquestionable verity, and are not to be attacked, and proof entered into, in a collateral proceeding to which said commissioners are not made parties, to show that they are false.

Parol evidence, in a collateral action, cannot be received to *contradict* the records of a public corporation, which are required by law to be kept in writing, or to show a mistake in the matters therein recorded.

If such record be *false*, and the corporation will not correct it, a party interested may, by mandamus, compel it to make correction so that it may conform to the truth.

Mandamus will not go to the Board of Commissioners after the levy of the tax has been completed, the tax has been extended on the assessment roll, and the roll placed in the possession of the tax collector for collection, because it would be nugatory for want of power in such board to make the correction that is required, it being *functus officio*.

The law confided the levy, assessment and collection of the special tax in question to three distinct and different sets of officials:

1. Its levy to the Board of Levee Commissioners.
2. Its extension on the parish assessment rolls to the parish assessors.
3. Its collection to the State tax collectors.

Once a tax is *in esse*, the tax roll placed in the hands of the tax collector, and the levying and assessing officers have become *functus officio*, the legality of such tax cannot be tested with the collector alone.

In case there be difficulty in interpreting the qualifying words of a sentence, the rule is to apply them to such *other* words or phrases as shall immediately precede them therein, rather than to those more remote.

Taxes levied under the authority of act 33 of 1879, and not collected prior to the passage of Act 44 of 1886, were not abrogated thereby. They were preserved and kept in force after the passage of the latter, by virtue of the saving clause contained in section 9 of said act.

A collateral inquiry into the legality of a tax levy, or assessment, apparently *legal* and *valid* on its face, cannot be entertained in an injunction suit against the tax collector alone, and after the levying or assessing officers have become *functus officio*.

Such an inquiry may be gone into and determined in such a suit in case the levy, or assessment is *void* on its face, or made in plain violation of some provision of the constitution or law.

APPEAL from the Ninth District Court, Parish of Concordia. *Young*, J.

*Conner & Conner* and *J. N. Luce*, for Plaintiff and Appellee.

*Steele, Garrett & Dagg*, for Defendants and Appellants.

The opinion of the Court was delivered by

WATKINS, J. The questions raised in this case are the legality and constitutionality of the five mill district levee tax that was levied in 1886 for the Fifth Levee District.

The plaintiff's contentions are:

*First*--That if the tax is claimed to have been levied by the Comsioners of the Fifth Levee District at a meeting alleged to have been held on the 22d of January, 1886, at Delta, Louisiana, it is null and void because there was, in point of fact, no such meeting held, and no such tax levied; but that three members of said Board of Levee Commissioners did meet at *Vicksburg, Mississippi*, on the night of the said 22d of January, and then and there attempt to levy this pretended, false and fraudulent tax.

*Second*—That if the legality of said levy be conceded in this respect, then it is null and void, because act 33 of 1879, creating the Fifth Levee District, was repealed by act 44 of 1886, and such taxes as may have been levied under the former, and not collected prior to

the passage of said repealing act, were thereby abrogated, and their collection cannot be now enforced in consequence thereof.

*Third*—That if said tax was levied by the General Assembly in section 8 of said repealing statutes, it is unconstitutional and void, because said section, thus construed, violates articles 203 and 214 of the Constitution.

On the trial, the district judge held that the tax which was levied by the Commissioners of the Fifth Levee District on the 22d of January, 1886, was abrogated by reason of the repeal of the law, under the authority of which the levy was made ; that, in so far as section 8 of the repealing statute was intended to operate as levy of said five mill tax by the General Assembly, the law was unconstitutional, and could not be enforced ; and from a judgment annulling the tax and perpetuating plaintiff's injunction, the defendant has appealed.

## I.

The official minutes of the proceedings of the Board of Levee Commissioners show, that they levied the tax in question at a meeting, duly convened and held at Delta, Louisiana, on the 22d of January, 1886.

Plaintiff's counsel sought to impeach this record with *parol* evidence, but the introduction of it was successfully resisted by defendants, on the grounds, viz :

*First*—That the official minutes of the board constitute a public record which imports absolute verity on its face, and same cannot be contradicted by parol, nor attacked in collateral proceedings to which said commissioners are not made parties.

*Second*—But, if parol proof · be deemed admissible, that F. S. Shields was not a competent witness by whom to prove its falsity, because he was a member of the board and attested the genuineness and correctness of said minutes as the secretary of the board.

It is elementary that parol evidence cannot be received for the purpose of impeaching or contradicting the records of judicial proceedings and the decrees of courts ; nor for the purpose of explaining or amplifying a legislative or congressional enactment; and it is contended, on 'the part of the defendant, that a similar protection is thrown around the proceedings of such political or municipal corporations as the Legislature may create.

But, in our view of this question, it cannot be examined and decided

in this collateral way, and in a suit to which the commissioners, who levied the tax, are not made parties.

It is so held by Judge Cooley in his treatise on taxation in the following terse and apposite language :

" It is generally held that the returns and certificates required of an officer, in the performance of official duty, are to be taken in the proceeding in which they are made, as of unquestionable verity. They are not to be attacked, and proof entered into, in a collateral proceeding, to which the *officer* is not a party, to show that they are *false.*"  Cooley on Taxation, p. 195.

This principle is in consonance with the views expressed by Mr. Justice Dillon on the subject:

" *Parol evidence*, in a collateral action, cannot be received to *contradict* the records of a public corporation, required by law to be kept in. writing, or to show a *mistake* in the matters therein recorded.

" The remedy is to have him (the officer), if in office, to correct the record according to the truth."  1 Dillon's Munic. Corp., Sec. 236.

This opinion is maintained by the courts of our sister States, and the following quotation is selected from a leading case in Connecticut :

" If a town corporation makes an erroneous record of its proceedings, this cannot be contradicted in a collateral action.

" In such action the record is conclusive.  If *false*, and the corporation will not correct the record, a party interested may, by *mandamus*, compel it to make the correction."  Boston Turnpike Company vs. Pomfut, 20 Conn. 500.

But even *this* remedy must be seasonably applied.

It will be too late to resort to mandamus after the officers of the board, or corporation, have become *functus officii*.

On this subject Mr. High says :

" Mandamus will not go to a board of supervisors, requiring them to make corrections in the assessment of taxes for the county, after the assessments have been completed, and warrants have been issued to the receiver of taxes, and the matter has passed beyond the control of the supervisors, since the writ would be nugatory if issued, and the rule is well established that mandamus will never issue when it would be nugatory, from *want of power in the respondent to perform the act required.*"  High's Ex. Legal Rem., Secs. 140, 141.

This agreement, in opinion of text writers of first ability, appears to our minds conclusive and their reasoning irresistible.

It is equally clear to our minds that this is a collateral proceeding—a third opposition, coupled with an injunction against the enforcement of the tax, and wherein the tax collector is the *sole* defendant.

The Legislature required the commissioners to *levy* the tax "payable on the assessment roll" of each current year. Sec. 8 act 33 of 1879.

It imposed upon them no other duty. That duty is separate and quite distinct from that imposed on the assessor.

The law has confided the levy, assessment and collection of the special tax in question to three sets of officials:

1. Its levy, to the Board of Levee Commissioners.
2. Its extension on the assessment roll, to the parish assessor.
3. Its collection, to the State tax collector.

There is, between their respective duties, a line of demarcation that is well-defined and clear.

It is essential to the validity of the tax that proper and legal proceedings should be taken in its levy and extension on the assessment roll, because it is through the correct performance of the duties assigned that the tax is brought into existence. But once *in esse*, and the tax-roll placed in the possession of the collector, the levying and assessing officers cease to have any relation to the tax, and are *functus officii*.

At this stage the legality of neither the levy nor the assessment can be tested by either injunction or mandamus, directed against the collector alone.

This contention of the plaintiff cannot be sustained, and the district judge decided correctly.

## II.

Act 44 of 1886 only purports to repeal, in express terms, that portion of act 33 of 1879 which *creates* the Fifth Levee District, and it purports to create in lieu thereof the Fifth *Louisiana* Levee District. Additional territory was given to the new district, and provision was made for the appointment of other commissioners to take charge of, and administer its affairs. It is clear, then, from this statement, that, in all other respects than the one first mentioned, said act 33 remains in force, and has effect, except in so far as its provisions are *inconsistent* with those of said repealing law.   39 Ann. 439, State of Louisiana vs. Natal; 93 U. S. 266, Broughton vs. Pensacola.

On this hypothesis the plaintiff *must* place her reliance in establishing the abrogation of the tax upon an implied, and not on an express, repeal of the law.

In opposition to her contention defendant's counsel attracts attention to the saving clause contained in section 9 of the repealing act, and which is couched in the following words, viz:

"That nothing in this act shall deprive *this* district of its share of the General Engineer Fund, and that all taxes *hereafter collected* on the rolls of the Fifth Levee District, as now existing, shall be transferred to the credit of the Fifth *Louisiana* Levee District," etc.

He relies on this clause as protecting the tax.

His theory is, that this provision of the statute, directing that "all taxes *hereafter* collected on the rolls of the Fifth Levee District * * shall be transferred to the Fifth *Louisiana* Levee District," of necessity implies, and presupposes the continued existence and enforceability of such taxes.

But a different construction has been placed upon it by the judge *a quo,* and which, in substance is, that the phrase "as now existing" refers to the rolls, and not to the Fifth Levee District; and he argues therefrom that, if the taxes thereafter collected on the rolls, as then existing, are alone to be transferred to the credit of the *new* district, the tax in question was not embraced in its provisions, from the fact that, on the 2d of July, 1886—the date said act 44 was signed and promulgated—it had not been extended on the assessment rolls of that year.

But we are of opinion that the quoted clause is not susceptible of such construction.

In case there be difficulty in interpreting the qualifying words in a sentence, the rule is to apply them to such *other* words or phrase as shall immediately precede them therein, rather than to those more remote.

To apply the phrase "as now existing" to the word "rolls," in the sense of the opinion of the judge *a quo,* necessarily involves the complete elision of the phrase "of the Fifth Levee District," and thus results in the entire reformation of the sentence.

We do not feel ourselves at liberty to do this.

The language, as employed in the legislative enactment, is a mandate unto us; and we cannot consent to any construction of it that would do violence to its letter or spirit; but, in thus expressing our opinion, we do not mean to criticize the views expressed by our learned brother of the lower court, for whose opinion we entertain a high regard.

In our view, the plain significance of the clause under consideration is, that all taxes which had been levied by the Commissioners of the

Fifth Levee District *antecedent* to the passage of the repealing statute, and which might be *subsequently* collected on the rolls of that district as that district existed when said repealing statute was enacted, should be transferred to the credit of the Fifth *Louisiana* Levee District.

Instead of abrogating the taxes which had been levied under the law of 1879, it was the clearly expressed intention of the Legislature to leave them in *proprio vigore.* Had such not have been the legislative intent, this guarded phrase would not have been employed, but another, that would have been unmistakable in its terms.

The tax in question was not abrogated by the provisions of Act 44 of 1886, and in this respect the opinion of the district judge was in error.

### III.

The views expressed in the preceding paragraph render it unnecessary for us to pass upon the constitutionality of Section 8 of Act 44 of 1886, whereunder it is suggested that the *General Assembly has levied* a five mill district levee tax.

The plaintiff's proposition, as we take it, is stated and argued in the alternative that we should decide—with the district judge—that the tax in question was abrogated, and attempted to be replaced or supplied by this legislative tax.

As the former exists and may be enforced, there is no room for such an hypothesis, and the construction of the act is not drawn in question and it was error of the judge *a quo* to so decide.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be reversed, the demands of the plaintiff rejected, her injunction dissolved, and all costs of both courts taxed against her.

---

### ON APPLICATION FOR REHEARING.

Plaintiff and appellee complains of our opinion on several grounds.
*First*—That it holds parol evidence to be inadmissible in a collateral proceeding to which the levee commissioners were not made parties— a ground of objection not taken in the lower court by defendant's counsel.

Possibly this *precise* objection was not urged in the court *a qua;* but plaintiff's counsel evidently considered that it was, as his brief on the hearing of the case will attest. Indeed, we selected therefrom some of the most pertinent authorities that are cited in the opinion.

*Second*—·That the following enunciation of the opinion, viz: "But once (the tax) *in esse*, and the tax roll placed in the possession of the collector, the levying and assessing officers cease to have any relation to the tax and are *functi officii*. At this stage the legality of neither the levy nor the assessment can be tested by either injunction or mandamus directed against the collector alone," is opposed to the settled jurisprudence of this Court; and, in proof of this assertion, he cites the following cases, viz: 36 Ann. 801, Cobb vs. McGuire, tax collector; 36 Ann. 804, Enault vs. McGuire, tax collector; 36 Ann. 960, Budd vs. Houston, tax collector; 35 Ann. 996, Jones vs. Rains, tax collector; 33 Ann. 833, Surgett vs. Chase, tax collector; 33 Ann. 843, Brown vs. Houston, tax collector; 30 Ann. 1086, Gonzales vs. Lindsey, tax collector.

A simple glance at the opinions referred to will demonstrate the error counsel has fallen into. The legality *vel non* of the levy of the tax under consideration in this case, is *dehors* the proceedings of the Board of Levee Commissioners, exclusively. If there is any, the illegality is *intrinsical*. On the contrary, the illegality of the tax under discussion in the quoted cases was either fundamental or *extrinsical*. It was apparent upon the face of the tax record, or raised on the law.

In 30 Ann. 1085, Gonzales vs. Lindsey, the objection urged to the tax was that the levy was in excess of the *rate* of taxation permitted by law.

In 33 Ann. 833, Surgett vs. Chase, the question was the constitutionality *vel non* of a twenty mill levee tax, it being in excess of the ten mill limitation.

In Brown vs. Houston, 33 Ann. 843, the question was whether a tax on a lot of Pennsylvania coal, on sale in New Orleans, was in contravention of the United States Constitution.

In Jones vs. Raines, 35 Ann. 996, the plaintiff claimed the nullity of a tax levied on a saw-mill, on the ground that it was exempt under Article 207 of the Constitution, as property employed in the manufacture of wood.

In Enault vs. McGuire, 36 Ann. 804, a similar question was raised as to the exemption of a certain alleged place of public worship.

Cobb vs. McGuire, 36 Ann. 800, was dismissed, because this Court was without jurisdiction.

In Budd vs. Houston, 36 Ann. 959, the tax collector and recorder were enjoined from placing a tax title on record, on the ground that there existed, in the proceedings leading up to the sale, certain "rad-

24

ical *defects*" which were not enumerated in the opinion. But enough can be gleaned from it to show that the *acts* of the tax collector were directly assailed.

The mooted question was the authority of the tax collector to stand in judgment for the State.

The plaintiff was appellant from a judgment dismissing the suit, on the ground that her petition disclosed no cause of action.

The Court held that " it is well settled that when an officer is proceeding to collect a State tax *illegally*, either on account of a *void* assessment or irregularity in the *mode* of collecting,   *   *   *   the proceedings may be arrested by injunction in a suit against the officer alone."

There is no question, in our minds, of the correctness of the views expressed in those cases ; and there is nothing in the opinion we have quoted from that militates against our opinion in the instant case. Its object and purpose were to decide that a *collateral* enquiry into the legality of a tax levy, apparently legal, and valid on its face, could not be gone into, in an injunction suit, against the tax collector alone. It was *not* the object or purpose of the opinion to hold that a levy, or an assessment *void* on its face, or in plain violation of the Constitution or the law, could not be tested in such a suit, and with the tax collector alone. The fact that, notwithstanding the views we entertained on this branch of the case, we entertained and decided the controversy in relation to the *legality* of the tax, is conclusively against plaintiff's hypothesis.

*Third*—That it erroneously holds that this is a collateral attack on the proceedings of the levee board.

In support of this contention her attorney cites the following cases as defining what is a collateral attack, viz: 36 Ann. 844, Gerac vs. Guilbeau; 35 Ann. 893, Ludeling vs. McGuire; 29 Ann. 112, Lannes vs. Workingmen's Bank; 30 Ann. 871, Workingmen's Bank vs. Lannes.

The first three of these cases were injunction suits restraining sheriffs' sales, at the instance of creditors of tax delinquents, of property in the possession of purchasers at tax sales, under recorded tax titles ; and the same were perpetuated on the ground that the validity of tax titles could not be tested in such collateral way.

The last of the four was a direct action. The views expressed in each of those cases meet our unqualified approbation. They are only illustrations of what are collateral proceedings, and do not conflict with the views expressed in our opinion herein.

*Fourth*—That the opinion was in error in assuming that the plain-

tiff's property was under seizure. This may be true; but there is an allegation in her petition to the effect that demand had been made on her by the sheriff for the payment of the tax complained of, and she was advised that if she did not pay the same her property *would* be seized and sold in satisfaction thereof.

In view of this averment, we must confess our surprise at the statement in counsel's brief that "no property had been *seized*."

There is no practical difference between an *actual* seizure and one that is apprehended.

But, if his intimation were correct, this would be an hypothetical case; and it is hardly to be believed that he would *insist* upon that view being entertained by us.

*Fifth*—That if the five mill tax, levied by the Commissioners of the Fifth Levee District for the year 1886, is maintained, plaintiff's property will be subjected to a double tax, inasmuch as, under Act 44 of 1886, creating the Fifth *Louisiana* Levee District, the General Assembly levied a five mill tax for the same year.

Hence, it is argued that our opinion is in error in holding the former valid, as the latter necessarily excludes it; or, if the former be maintained the latter must be invalidated.

As we understood plaintiff's petition, it was aimed at *the* five mill tax that was levied by the commissioners on the 22d of January, 1886; and the constitutional power of the Legislature to levy the tax indicated in Act 44 of 1886, was drawn in question, only in the alternative that we should hold the former was not enforceable. It was manifestly the intention of the plaintiff to resist the collection of but *one* tax, and our opinion was properly limited to its consideration.

Rehearing refused.