THE RIO VISTA HOTEL & IMPROVEMENT COMPANY v. BELLE MEAD DEVELOPMENT CORPORATION.

182 So. 417.
Division B.
Opinion Filed December 22, 1937.
Reaffirmed on Rehearing June 10, 1938.
Extraordinary Petition for Rehearing Denied July 14, 1938.

*Scarlett & Futch* and *Walter C. Hardesty, Jr.,* for Appellant;

*B. F. Brass,* for Appellee.

BUFORD, J.—The Belle Mead Development Corporation brought its bill of complaint against the Rio Vista Hotel & Improvement Company, the Southern Abstract Company, as trustee, the City of Ormond, the Mortgage & Securities

Company, H. L. Post and Walter C. Hardesty, seeking to foreclose certain tax sale certificates, which had been purchased by complainant.

The bill of complaint alleged substantially that as against Lot 91, Block 27, Rio Vista, City of Ormond taxes, lawfully assessed and levied were unpaid for the years 1925, 1926, 1927 and 1928; that the City of Ormond was the purchaser of said land and of tax sale certificates No. 93 in the amount of $495.05, No. 305 in the amount of $304.95, No. 444 in the amount of $403.13, and No. 578 in the amount of $325.69, for the years 1925, 1926, 1927 and 1928 respectively, embracing and covering the above described land; that on October 22, 1931, the town of Ormond, for valuable consideration, assigned each of said tax sale certificates to complainant; that more than two years have elapsed since the issuance of said tax sale certificates and no part of the moneys therein mentioned has been paid to complainant or to any prior holder thereof or to anyone for the use of complainant; that complainant holds a lien on said land for the full amount of principal and interest due on said tax sale certificates; that the interests claimed by various defendants in said land are inferior to complainant's lien; that H. L. Post has or claims some right, title, interest or lien in and to said land because he has purchased and holds tax sale certificate No. 956 in the amount of $378.45 for the year 1929, and the lien for unpaid taxes amounting to $648.38 for the year 1930, from complainant, who in turn purchased the same from the City of Ormond; that complainant is ready and willing to do equity; that by Chapter 14277, Acts of 1929, the town of Ormond was abolished and the City of Ormond was created, the Act providing that the title, right and ownership of property, uncollected taxes, dues, claims, judgments, decrees and choses in action held and owned by the town of Ormond passed

to and became vested in the City of Ormond; that Chapter 13206, Acts of 1927, ratified, confirmed, validated and legalized the assessments, valuations and levies of taxes for the years 1925 and 1926, and the said Town was authorized to collect said taxes in the manner provided by law, or by the Charter or ordinances of said Town; that in the same manner, by Chapter 14279, Acts of 1929, the assessments, valuations and levies of 1927 and 1928 were validated and the Town authorized to collect such taxes; and that in the same manner, by Chapter 15400, Acts of 1931, the assessments, valuations and levies of 1929 and 1930 were validated and the Town authorized to collect such taxes.

Decree *pro confesso* was entered against the Mortgage & Securities Company and H. L. Post.

On January 12, 1935, the court denied the motion to dismiss the bill made by the City of Ormond, granted the motion to strike of the defendants, and denied certain other motions. On February 4, 1935, the court entered an order allowing the City of Ormond to file its answer which was done on that date.

The Rio Vista Hotel & Improvement Company, the Southern Standard Abstract Company, as trustee, and Walter C. Hardesty, filed their amended answer to the bill of complaint. Upon motion, certain parts of the amended answer were ordered stricken by the court. The parts of the amended answer stricken, which are material on this appeal are found in three paragraphs of the answer, the substance of which are as follows: (1) The assessment rolls of the Town of Ormond for the years 1925-1930 inclusive are partly in handwriting and partly in typewriting, prepared by some person, whose identity is not shown upon the face of the rolls, nor attached to them; that on said rolls is no verification purporting to be

made by the person or persons who prepared said rolls; that there is written thereon no warrant to the Town Tax Collector, nor was any warrant or affidavit of the assessor attached thereto originally or at any time since, commanding or directing the said Collector to sell the lands described therein for non-payment of taxes, upon default in payment; that this was contrary to the provisions of Sections 940 and 942 C. G. L., and Sections 98 of Chapter 14277, Acts of 1929; that this violated the Fourteenth Amendment to the United States Constitution by failing to follow due process of law, and Article IX, Section 5, of the Florida Constitution, providing that "all property shall be taxed upon the principles established for State taxation." (2) Neither The Rio Vista Hotel & Improvement Company, owner of Lot 91, Block 27, Rio Vista, or the Rio Vista Hotel Corporation, its predecessor in title, owned any personal property, goods, chattels or intangibles between January 1st, 1925, and January 1st, 1930, nor do they now or have they ever owned in said Town of Ormond any such personalty; that the Town of Ormond which later became the City of Ormond, at no time during said period assessed or levied upon any personal property, goods, chattels, or intangibles, or any power transmission lines of the Florida Power & Light Company, or the property and equipment lines of the Southern Bell Telephone & Telegraph Company, operating in said Town, or the two franchises held by them, all valued at several million dollars, and which personalty if it had been assessed and levied upon would have reduced defendant's taxes by as much as 50%, and defendants tender into court the sum of 50% as an offering to do equity in the premises, or such other sum as the court may determine to be due; that The Rio Vista Hotel & Improvement Company does not now and has not since January 1, 1925, owned any other property taxable in said

Town of Ormond, therefore it cannot tender into court any other taxes. (3) The defendants were at no time since January 1, 1925, guilty of laches in their efforts to secure from said Town of Ormond a just valuation of all personal property in said Town; that they through their officers, agents and attorneys repeatedly appeared each year before the board of equalization of said Town and brought these things to their attention; and that in 1928 they brought mandamus proceedings against said Town to compel the levy of personalty in said Town; that these defendants would have pressed said mandamus suit to final conclusion if they had had available funds to do so, but said town hired the best legal talent and had the cause removed to another circuit, making the prosecution of the case so inconvenient that the proceeding was allowed to remain in *status quo;* that this shows a deliberate and systematic scheme to exempt all property except lands from taxation in said town contrary to Article IX, Section 1, Florida Constitution.

The first four questions presented in appellant's brief relate to the same matter, namely, whether the absence from the face of the tax roll, or anything attached thereto, of an affidavit showing who prepared the tax roll and a warrant from the assessor to the tax collector commanding the latter to proceed with the collection of taxes, renders the assessment void and whether curative Acts subsequently passed will remedy these infirmities in the tax roll. All of these questions will be disposed of together.

Lot 91, Block 27, Rio Vista, was sold to the City of Ormond for non-payment of taxes for the years 1925, 1926, 1927, and 1928, together with the tax certificates for those years. The certificates were later purchased by complainant, who is now seeking to foreclose them. One defense to the foreclosure is that the assessments for those

years were void because the tax rolls contained no verification of the person making them, and they contained no warrant of the tax assessor commanding the tax collector to collect the taxes or sell the lands for non-payment thereof.

"The tax roll must be signed and must be authenticated as required by statute; but if no statute requires it, verification by the assessors is not necessary. The statutes generally provide how the assessment roll or list shall be authenticated, and as the purpose is to supply record evidence that in the performance of their duty the assessors have obeyed the law, compliance with the statutory direction has generally been held imperative. This includes the signature of the assessors where required; but where the statute required the roll to be signed, and a certificate to be attached, the signing of the certificate was held to dispense with a signing of the roll. The failure to attach the certificate or other statutory verification would be still more plainly a failure to comply with the statute in its essentials, the verification in express terms being, more obviously, a matter of substance than the signing." 3 Cooley—Taxation (4th ed.) 2353, Sec. 1172.

The rule relating to the necessity for the certificate or verification of the tax roll is stated in 61 C. J. 729, Section 902, as follows:

"While no formal certification or authentication is necessary, if not expressly required by statute, it is usually held that failure to comply with a requirement that the roll or list be authenticated by an affidavit or verified certificate, made and attached thereto by the assessor or other officer engaged in preparing the roll, attesting its genuineness and setting forth that his official duties have been duly performed, is fatal to the validity of any further proceedings dependent upon legality of the assessment, unless there is a curative statute, or it is expressly provided that a failure

to authenticate the roll shall not affect the validity of the assessment."

In the case of City of Orlando v. Equitable Building & Loan Association, 45 Fla. 507, 33 So. 986, this Court held that the failure of the tax assessor of the City of Orlando to annex to the City assessment roll an affidavit in the form prescribed by Section 8 of Chapter 3786, Acts of 1887, would invalidate the assessment.

In the case of State, *ex rel*. Dofnos Corporation, v. Lehman, 100 Fla. 1401, 131 So. 333, this Court adhered to the position taken in the case of City of Orlando v. Equitable Building & Loan Association, *supra;* and, in holding that the absence of the tax assessor's certificate vitiated the sale of the land and certification to the City, said:

"The relator contends that the omission of the assessor's certificate from the assessment rolls vitiated the sale to the city and relies on City of Orlando v. Equitable Building and Loan Association, 45 Fla. 507, 33 So. 986, to sustain its contention. This case is supported by the great weight of authority in this country which is to the effect that such certificate or verification of an assessment roll is for the purpose of securing uniformity in assessments and fair valuations of real estate and is mandatory, that if the assessor omits the verification or attach to the roll an affidavit or certificate which is defective in material particulars the tax is not legally assessed and all proceedings thereunder are void. 26 Ruling Case Law 356. State Finance Company v. Mather, 15 N. Dak. 386, 109 N. W. R. 350, 11 Ann. Cas. 1112, note 1118, where all the cases in this country are collected. A few equally respectable authorities hold, however, that statutes requiring the authentication of assessment rolls by a certificate or affidavit of prescribed form are directory rather than mandatory and that a non-compliance with such requirements, either in the omission of

any verification or in the making of a defective affidavit or certificate does not invalidate the assessment or proceedings had thereunder, unless the taxpayer is prejudiced thereby. See note to State Finance Company v. Mather, 11 Ann. Cas. 1120, where authorities supporting this view are collected. "The reason for the majority rule as approved by this Court in City of Orlando v. Equitable Building and Loan Association, *supra,* is sound and well supported. It was designed to safeguard the interest of the taxpaying public and to secure fairness in valuation and uniformity in assessment, thus assuring to every one that his property will be assessed according to the value and the burden of taxation fairly distributed. We are convinced of no reason why we should relax it or depart from it."

The rule as to the nature and necessity of a warrant of collection to be attached to the tax roll is stated in 61 C. J. 1020, Sec. 1308, as follows:

"A special and formal warrant or other precept, directing collector to proceed with the collection of the taxes and to enforce their payment, is not necessary when not required by governing statutes. On the other hand, in jurisdictions or in cases where such a warrant is required by statute, it alone, or it and the tax list or duplicate together, constitute and limit the collector's authority, and he must be provided with it before he can lawfully take steps against delinquent taxpayers. A void warrant confers no authority on the collector, and all subsequent proceedings based on the warrant are void."

In the case of Florida Savings Bank v. Brittain, 20 Fla. 507, the question was raised as to the effect on the assessment of the absence from the tax roll of any warrant to the tax collector, and the Court in that case said:

"The Act of 1869 providing for the incorporation of cities authorized the election of an Assessor and Collector

of City Taxes. It also authorized the raising by tax and assessment upon all real and personal property of the money necessary to carry on the city government, 'and to enforce the receipt and collection thereof *in the same manner'* provided by law in relation to State taxes. Sections 23, 24.

"The Revenue Act of 1874, ch. 1976, made it the duty of the Collector to collect taxes by levy and sale of real and personal property. Sec. 42. And Section 56 directs the Tax Collector of a city to proceed substantially in the same manner in the collection of taxes and sale of lands for the non-payment of taxes as collectors of Revenue; and Section 61 directs the Clerk of the City to make deeds for lands sold for unpaid taxes substantially in the form to be used by the County Clerk as provided by Section 60.

"The Revenue Act of 1874 required the County Assessor to annex to the assessment roll delivered to the Collector a warrant directing him to collect the State and county taxes. In The State v. Rushing, 17 Fla. 223, and in Donald v. McKinnon, *ib.,* 746, this court held that in the absence of a warrant to the Collector of Revenue he was not authorized to make a sale, and the sale would pass no title.

"The twenty-third section of the Act of 1869 authorized and required the City Council to enforce the receipt and collection of taxes 'in the same manner' as provided by law for the assessment and collection of State taxes. If this has any meaning, it is that the city authorities shall employ substantially the same machinery for such purposes as was provided in the case of State taxes. This included an assessment by an Assessor, in which duty he is required to make a list of taxable property with a valuation thereof, in the name of the owner if known, and to apportion the due quota of taxes to each parcel of property, and to issue a warrant addressed to the Collector, directing him in the name of the State to collect the taxes set down in the assess-

ment roll against the names of the owners and the property. This is the Collector's authority to collect.

"The proper conclusion is that a warrant is a necessary part of the machinery for the collection of city taxes, because it is necessary in the case of State and county taxes; and that the instruction to the jury in this respect was correct."

However, the rules set forth above, apply only where there is some requirement in the statutes to the effect that the assessor or the person or persons compiling the tax roll shall attach thereto an affidavit or certificate of authentication, and a warrant to the tax collector. The answer in this case set up that these requirements were made by Sections 940 and 942 C. G. L. But these statutes, as is shown from the language embodied therein, relate only to State and county taxes, and are not applicable in this case. No special Act is set forth in the answer which expressly adopts the procedure for assessment and collection of State and county taxes as the procedure for the assessment and collection of taxes of the town of Ormond. The answer further set out that Section 98 of Chapter 14277, Acts of 1929, required that a certificate and a warrant be attached to the tax roll, and gave the forms for them. This is true, but the Acts of 1929 could have no effect on the tax rolls or the method of assessment and collection for the years 1925, 1926, 1927 and 1928, which are those under attack here. The portion of the answer setting up these inapplicable statutes was properly stricken. So the answer lacked appropriate allegation showing that it was necessary to have a certificate and a warrant attached to the tax roll.

The next phase of this situation is whether curative Acts subsequently passed could remedy these defects, if they were defects.

Chapter 13206, Acts of 1927, was passed to ratify, confirm, validate and legalize the assessments, valuations of properties and levies of taxes made by the town of Ormond for the years 1925 and 1926, and to authorize collection of said taxes in the manner provided by law. The Act provided as follows:

"Section 1. That the assessments, valuations of properties and levies of taxes made by and entered upon the rolls and records of the Town of Ormond, Volusia County, Florida, for the year A. D. 1925 and 1926, and all Acts and proceedings done and performed by the officials of said Town in connection with said assessments, valuations of properties and levies of taxes for the years A. D. 1925 and 1926, be and they are hereby severally ratified, confirmed, validated, legalized and made and declared valid, legal and binding both in law and in equity upon all the lands and improvements on which the same are made, assessed and levied and shall stand as the assessment of the taxable property within the Town of Ormond for the years A. D. 1925 and 1926, respectively, and the Town of Ormond, Florida, through its duly constituted authority, be and it is hereby empowered and authorized to collect all taxes so assessed and levied in the manner provided by law or as may be provided by the present Charter and said Ordinances of the said Town."

Chapter 14279, Acts of 1929, was passed for the same purpose as the above quoted Act except that it covered the assessments, valuations and levies of 1927 and 1928, the language of both Acts being, otherwise, identical.

"The rule in respect to statutes curing defects in legal proceedings where they amount to mere irregularities, not extending to matters of jurisdiction, and in the absence of constitutional limitations, is that if the thing wanting, or which failed to be done and which constitutes the defects

in the proceedings, is something the necessity for which the Legislature might have dispensed with by prior statute, then it is not beyond the power of the Legislature to dispense with it by subsequent statute; and if the irregularity consists in doing some Act, or in the mode or manner of doing some Act, which the Legisalture might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law." Middleton v. City of St. Augustine, 42 Fla. 287, 29 So. 421.

· It is competent for the Legislature to dispense with the affidavit and warrant of the assessor or to provide that a failure to attach such affidavit or warrant shall not render the assessment invalid. State, *ex rel.* Lewellen, Collector, v. Schooley, 84 Mo. 447. However, the Acts in question, relied upon to cure the defect of omission of the certificate and warrant do not have that effect. These statutes provide that "all acts and proceedings done and performed by the officials of said Town in connection with said assessments, valuations of properties and levies of taxes * * * are hereby severally ratified, confirmed, validated, legalized." There is no attempt to validate and cure omissions of the officials of the Town, but only to validate all their *acts* and *proceedings* which were *done* and *performed.*

· As the case now stands, the fact as to whether defendants can allege in their answer applicable statutes under which the tax rolls of the Town of Ormond for the years 1925, 1926, 1927 and 1928 must have a verification and a warrant attached thereto, becomes immaterial in view of the disposition to be made of this case. No opportunity to amend to allege such statute or statutes, if there be, need be given defendants, because of the disposition to be made of this case on other grounds.

The attempt by the Town Tax Collector *to* collect the taxes several years after they became due does not affect

the right to collect them. 26 R. C. L. 287; Sams v. King, 18 Fla. 552; Stieff v. Hartwell, 35 Fla. 606, 17 So. 899; Jenkins v. Entzminger, 102 Fla. 167, 135 So. 785.

The fifth question presented is whether a municipal tax roll is uniform and equal, within the constitutional meaning of those terms, which levies only upon real property, disregarding all personal property in said town of every kind, nature and description?

It was set up in the answer that no personal property in the Town of Ormond was levied on for the years 1925, 1926, 1927 and 1928, although defendants through their officers, agents and attorneys repeatedly appeared each year before the board of equalization of the Town and brought these matters to their attention; and in 1928 instituted mandamus proceedings against the Town to compel it to levy on the personal property, but the Town, through its attorneys, had the suit removed to another circuit, making the prosecution of the case so inconvenient that defendants allowed it to remain *in status quo*. The answer also set out that the defendant, Rio Vista Hotel & Improvement Company, owned no personal property, and if a tax had been levied upon the personal property, it would reduce the amount of said defendant's taxes on real estate by 50%.

A municipal corporation has no inherent power to exempt from taxation any property which by its charter it is authorized to tax. Whiting v. West Point, 88 Va. 905, 29 A. S. R. 750; Springfield v. Smith, 138 Mo. 645, 60 A. S. R. 569. If the taxing officers intentionally omit taxable property from the assessment roll the entire roll is void; but if the omission is in consequence of a *bona fide* belief that the property is exempt from taxation the assessment will be valid. Tampa v. Kaunitz, 39 Fla. 683, 23 So. 416.

Statutes of the State of Florida require that all property, real and personal, in this State, and all personal prop-

erty belonging to residents of the State, not exempted from taxation, shall be subject to taxation. If property subject to taxation, substantial in value, is intentionally omitted from the assessment roll by an assessor without knowledge of its liability, a right of complaint is thereby given against the entire assessment to anyone, whose burdens are thereby unduly increased. Roberts v. American National Bank, 94 Fla. 427, 115 So. 261; West Virginia Hotel Co., 101 Fla. 1147, 132 So. 842.

In the case of Gilman v. Sheboygan, 67 U. S. 510, 17 L. Ed. 305, the Supreme Court of the United States said:

"The bill avers that at the time the tax complained of was levied, there was personal property in the city of the value of from $300,000 to $400,000, liable to taxation. The demurrer admits this fact. The statute prescribing the property to be taxed, and that to be wholly exempted from taxation, shows that this personal property must have been taxed for other puposes. This tax levied exclusively upon the real estate of the City. That was a discrimination in favor of the personal property. It was beyond the constitutional power of the Legislature to make any discrimination. Property must be wholly exempted or not exempted at all. No partial exemption or discrimination is permitted. To impose certain taxes exclusively upon one class of taxable property is as much a discrimination as to vary the rates of the same or other taxes upon different classes of property."

We now come to the sixth and seventh questions presented, which are in effect as to whether laches will preclude the defense that the tax assessment was void.

In the case of West Virginia Hotel Co. v. Foster Co., 101 Fla. 1147, 132 So. 842, we said obiter that a taxpayer may question the validity of an assessment and levy

at any time prior to the issuance of a tax deed, in the absense of statutory provisions to the contrary, or special circumstances which would create an estoppel under general equitable principles relating to the subject.

Laches will bar the right to institute various legal and equitable remedies to have a levy or assessment of taxes declared invalid. (1) Mandamus to compel the assessor or board making the assessment to correct the assessment cannot be maintained after the assessment has been placed in the hands of the collector, Gaither v. Green, 40 La. Ann. 362, 4 So. 210; Knight v. Thomas, 93 Me. 494, 45 Atl. 499; Colonial Life Assurance Co. v. New York County, 24 Barb. (N. Y.) 166, but even where mandamus would otherwise be available it may be lost by laches or unreasonable delay. People v. Olsen, 215 Ill. 620, 74 N. E. 785. (2) Proceedings to restrain an illegal assessment comes too late if delayed until the tax has been assessed and expenditure begun. 61 C. J. 895, Sec. 1130; Bretton Woods Co. v. Carroll, 84 N. H. 428, 151 Atl. 705. (3) An action to reduce an assessment or abate a tax may not be begun after the time limited by statute even though the assessments are grossly excessive, and conditions precedent have been complied with, unless the delay is due to the act of the assessor. 61 C. J. 901, Sec. 1136. (4) An action for the reduction of taxes assessed for the past five years brought by bill to quiet title was not necessarily unreasonable or barred by laches. Inland Empire Land Co. v. Grant County, 138 Wash. 439, 245 Pac. 14. (5) An action to cancel or vacate an assessment must be brought within the time limited by statute, if any; but where the taxpayer has not been given the opportunities required by law, the action lies even after expiration of the time prescribed for bringing it. 61 C. J. 909, Sec. 1147, and cases cited.

In this case the Town of Ormond bought the land and the tax sale certificates, and for valuable consideration sold them to complainant. The two years in which the delinquent taxpayer may redeem the property has expired, but no tax deed has yet issued for the land. Can defendants defend against foreclosure of these tax sale certificates on the ground that no personal property was levied on or assessed during the period of time the taxes complained of were assessed against defendant's real estate, when the defense is interposed in 1935 as against taxes assessed for the year 1924-1928 inclusive?

In the case of Tax Securities Corporation v. Manatee Co., 115 Fla. 655, 155 So. 742, the defendant had for several years failed to seek relief against unequal assessments. Then when the tax sale certificates were sought to be foreclosed, the delinquent taxpayer attempted to defend by asserting that the assessment upon which the tax sale certificates were predicated was invalid. The Court in that case said:

"The answer of the defendant filed February 8, 1933, does not show void or illegal assessments of defendant's lands; and if such assessments are voidable, the defendant has neglected to seek the administrative relief under the statutes or judicial relief during the years the taxes have been a first lien on the lands. Defendant still has the right to redeem its lands pending foreclosure decree; but it cannot now be heard to assert its challenge as made to the entire assessment rolls for several years, when it had not paid any taxes on the land, and has so long neglected to avail itself of remedies afforded by law, and others have bought tax sale certificates which it could have redeemed to its great advantage."

It is alleged in the answer in this case that the defendant Rio Vista Hotel & Improvement Company, unlike the

delinquent taxpayer just referred to in the above quoted
case, had tried to get the equalization board of the Town
to levy on and assess the personal property in the Town,
but without avail. Then in 1928, mandamus proceedings
were instituted against the Town, but were not prosecuted
to final decree because of the inconvenience of conducting
the litigation in another circuit. When the board refused
to act, upon the suggestion of the taxpayer, legal means
should have been employed to require them to act. The
abandonment of the mandamus proceedings was equivalent,
so far as the diligent protection of the taxpayer's rights
were concerned, to never having instituted such proceedings.
The taxpayer, by merely instituting legal proceedings or
asking the board of equalization to act, without prosecut-
ing either to final conclusion, cannot be said to have been
diligent in the protection of its rights.

In the case of Aull v. Lidepa Corporation, 118 Fla. 408,
159 So. 808, a situation existed which was practically the
same as the situation existing in this case, and this Court
said in that case:

"The bill of complaint shows that the complainant at all
times knew what the condition was; that he was cogni-
zant of the sort of assessment that was being made, and yet
he stood by and allowed the assessment to stand, the taxes
to become in default, other people to pay their taxes as as-
sessed, tax certificates to issue to purchasers at tax sale,
those certificates to be assigned and transferred through
mesne assignments to the present holder thereof for con-
siderable value, and after the two-year period of redemp-
tion had expired then seeks to have the certificates canceled,
and to avoid the payment of any tax on his property.

"The allegations of the bill of complaint are sufficient
to show that the assessment was one which should have
been enjoined upon timely application in that behalf, be-

cause of its discriminatory character, but this suit, coming as it does, long after maturity of the tax sale certificates, and when those certificates have gone into the hands by assignment to a purchaser thereof by a third person, it is too late to avail the cancellation of the certificates. See D. Lee v. Booker & Co., 108 Fla. 534, 146 So. 546; Tax Securities Corp. v. Manatee Corporation, *et al.,* 115 Fla. 655, 155 So. 742."

The delinquent taxpayer has, in this case waited too long to assert the invalidity of the assessment, and is precluded by laches from asserting it as a defense. Consequently the errors complained of in striking vital portions of the answer have thereby been rendered harmless.

Affirmed.

WHITFIELD, TERRELL and CHAPMAN, J. J., concur.

BROWN, J., concurs specially.

ELLIS, C. J., dissents.

BROWN, J. (concurring specially).—On the question of whether a taxpayer may be estopped by reason of the lapse of a few years from questioning an attempt to take his property for non-payment of taxes attempted to be assessed against him on a grossly discriminatory and void assessment roll, I still retain the views expressed by me in my dissenting opinion in the recent unreported case of Draughon v. Heitman, but as the majority of the court held directly opposite views on the question, I consider it settled to the contrary. I therefore concur, under protest as it were. I think we should return to the sounder doctrine established in that line of our older cases ending with West Virginia Hotel Co. v. Foster, 101 Fla. 1147, 132 So. 842.

## ON REHEARING

WHITFIELD, J.—The provision of Section 5, Article IX, of the Constitution that "all property shall be taxed upon the principles established for State taxation," has reference to the organic requirements of "a uniform and equal rate of taxation" and to such statutory regulations "as shall secure a just valuation of all property, both real and personal, excepting such property as may be exempted by law." The mechanics of assessing and collecting authorized tax levies are not of "the principles established for State taxation" referred to, no other organic provision being violated. 102 Fla. 383. See Sec. 1, Art. IX; Merrell v. City of St. Petersburg, 64 Fla. 367, 60 So. 349; Ellis v. A. C. L. R. R. Co., 68 Fla. 160, 66 So. 1005; City of Bradenton v. S. A. L. Ry. Co., 100 Fla. 606, 130 So. 21; Ranger Realty Co. v. Miller, 102 Fla. 378, 136 So. 546.

Even if the statutory provision in Section 942 (734) C. G. L., first enacted in Chapter 1713, Section 40, Acts of 1869, that a warrant signed by the tax assessor and annexed to the tax roll delivered to the tax collector commanding the tax collector to collect "the taxes set down in the assessment roll," *may have been regarded as one of* "the principles established for State taxation" in accordance with which "all property shall be taxed" under Section 5, Article IX, of the Constitution, in holding that the failure of the tax assessor to affix the warrant to the assessment roll had the legal effect of rendering the assessment roll void, (see State v. Rushing, 17 Fla. 226, 231; Donald v. McKinnon, 17 Fla. 746; Savings Bank v. Brittain, 20 Fla. 507; State v. Lehman, 100 Fla. 1401 131 So. 333; City of Orlando v. Equit. Bldg. & Loan Assn., 45 Fla. 507, 33 So. 986) then Chapter 10040, Acts of 1925, Section 894 C. G. L., Section 894 Perm. Supp. to C. G. L., Chapter 17442, Acts of 1935, has changed the effect so given to Section 942 (734) C. G. L.

by enacting that "no act of omission or commission on the part of any tax assessor * * * shall operate to defeat the payment of said taxes; but any such acts of omission or commission may be corrected at any time by the officer or party responsible for the same."

The result is that at least since the effective date of Chapter 10040 in 1925, the failure of a tax assessor to annex the statutory warrant to a tax assessment roll does not render the assessment roll void; and the tax assessor may annex the required warrant at any time, and the omission "shall in no way affect any process provided by law for the enforcement of the collection of any such tax." Sec. 894 C. G. L. See Hackney v. McKenny, 113 Fla. 176, 151 So. 524; Tax Securities Corp. v. Manatee Co., 115 Fla. 655, 155 So. 742; Ranger Realty Co. v. Hefty, 112 Fla. 654, 152 So. 439; State v. Lummus, 111 Fla. 746, 149 So. 650.

In this case the holder of the municipal tax sale certificates may enforce the lien of the certificates to the extent of the amounts paid to the municipality for the certificates with interest and costs, the owner of the land having the right to redeem or to purchase at the foreclosure sale.

Reaffirmed on rehearing.

TERRELL, BUFORD and CHAPMAN, J. J., concur.

ELLIS, C. J., and BROWN, J., dissents.

BROWN, J. (dissenting).—On rehearing, I am of the opinion that the order appealed from should be reversed. In a special opinion concurring in the original decision in this case I stated that I did so because I thought that the questions involved had been settled adversely to the appellant in the recent and then unreported case of Draughon v. Heitman, in which case I had filed a dissenting opinion. The report of the case of Draughon v. Heitman now appears in 124 Fla. 24, 168 So. 838. But on a fuller consideration

of the case at bar on this rehearing, I do not think this case is concluded by the case above cited, which case involved the failure to assess intangible property, when considered in connection with the later case of Coombes v. City of Coral Gables, 124 Fla. 374, 168 So. 524.

One of the defenses interposed to the foreclosure of the tax certificates of the City of Ormond in this case is that the assessments for the years 1925 to 1928 were *void* because of the city tax rolls for those years contained no verification and no warrant, thus rendering the tax assessments void; appellant citing City of Orlando v. Equitable Building & Loan Association, 45 Fla. 507, 33 So. 986; State, *ex rel.* Dofnos Corporation v. Lehman, 100 Fla. 1401, 131 So. 333; Florida Savings Bank v. Brittain, 20 Fla. 507. But our former opinion in the instant case holds that the above rules apply only where there is some requirement in the statute to that effect, whereas the stricken portions of appellant's answer did not allege any special Act making these requirements as to the tax rolls of the City of Ormond. While the answer *did* allege that these requirements were made by Sections 940 and 942, C. G. L., the opinion states that these sections by their terms apply only to state and county taxes.

That is true, but Article IX, Section 5, of the Constitution, in authorizing counties and municipalities to assess and impose taxes for county and municipal purposes, requires that: "all property shall be taxed upon the principles established for State taxation."

In Florida Savings Bank v. Brittain, *supra,* there was no express provision in the Act incorporating the municipality requiring the inclusion of a warrant to the tax collector, but the Act did require the city council to enforce the assessment and collection of taxes "in the same manner" as provided by law for the assessment and collection of State

taxes. This court held that the existence of the warrant was a necessary part of the machinery for the collection of municipal taxes because it was necessary in the case of State and county taxes.

In our previous decisions, we have called attention to the fact that a certificate or verification of the assessment roll by the tax assessor is for the purpose of securing uniformity in assessments and fair valuations of real estate, and to safeguard the interests of the taxpaying public, and that a failure to comply with this requirement renders the assessment roll invalid. As this seems to be a fundamental principle of State taxation established in the early days by our statutes with reference to State and county taxation, and retained to this good day, the constitutional provision above referred to requires it to be observed with regard to municipal taxation. Adherence to that principle would require us to hold that the assessments involved in this case, and the proceedings based thereon, were and are void. It does not appear that the omissions complained of had been supplied (under Chapter 10,040) at the time these certificates were sold. And the subsequent attempted validating Acts expressly related to validation of what the officers had done; not what they had omitted to do. And in Coombes v. City of Coral Gables, 124 Fla. 374, 168 So. 524, we held that the rule that a taxpayer may waive his right, or may be estopped by laches or otherwise, to contest the validity of a tax lien, is not applicable when such lien is utterly void.

The case of Tax Securities Corporation v. Manatee Company, 115 Fla. 655, 155 So. 742, dealt with voidable assessments. It does not uphold the theory that laches can breathe life into a void assessment.

As a tax roll does not become a valid tax roll until it has been signed or verified, the defendants could not be held guilty of laches for failure to earlier complain of the

void tax rolls involved in this case. However it appears that their father, the former owner, had vigorously and persistently objected to the omission of personal property from the tax rolls involved in this case.

Furthermore, the assessments were illegal and void under the decision of this court in Coombes v. City of Coral Gables, 124 Fla. 374, 168 So. 524, in that there was a deliberate omission to assess personal property, which cast an unfair burden upon the then owner of this real estate.

Since the tax sale certificates involved in this case, under the facts pleaded, are, as I see it, void, the decree below should be reversed *in toto*. In any event, the most that the appellee could possibly be entitled to in equity would be the amount it actually paid for such certificates; in other words, the most that equity could possibly allow it, is reimbursement, but should deny it the right to collect interest and penalties based on a void, or even on a voidable, assessment.

I think, therefore, that the order and decree appealed from should be reversed.

ELLIS, C. J., agrees to the conclusion.